# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**

November 8, 2018

Lyle W. Cayce
Clerk

No. 17-60792
Summary Calendar

ROBERTO ENRIQUE MAURICIO-BENITEZ, also known as Roberto
Sanchez-Fajardo,

      Petitioner,

v.

JEFFERSON B. SESSIONS, III, U. S. ATTORNEY GENERAL,

      Respondent.

Petition for Review of an Order
of the Board of Immigration Appeals
BIA No. A098 121 741

Before HIGGINBOTHAM, ELROD, and DUNCAN, Circuit Judges.

JENNIFER WALKER ELROD, Circuit Judge:

Petitioner Roberto Enrique Mauricio-Benitez, a native and citizen of El Salvador, seeks review of a final order of removal issued by the Board of Immigration Appeals (BIA). He contends that the BIA erred in refusing to reopen his removal proceedings because he never received notice of his removal hearing. Because Mauricio-Benitez failed to provide the immigration court with his correct mailing address, and because he failed to rebut the weak presumption of delivery of his notice of hearing (NOH), we DENY his petition for review.

No. 17-60792

I.

On or around June 13, 2004, Mauricio-Benitez entered the United States near Roma, Texas, without being admitted or paroled.  The same day, the Department of Homeland Security (DHS) personally served him with a Notice to Appear (NTA) charging him with being removable under 8 U.S.C. § 1182(a)(6)(A)(i).  The NTA ordered Mauricio-Benitez to appear at a removal hearing before an immigration judge (IJ) at a date and time to be set and noted the following: "If you fail to attend the hearing . . . a removal order may be made by the [IJ] in your absence[.]"  Mauricio-Benitez acknowledged on the NTA that he had received oral notice in Spanish of the consequences of failing to appear.

The NTA also contained instructions regarding Mauricio-Benitez's mailing address.  It stated that he was required to provide the DHS with his address in writing and warned him to "notify the Immigration Court immediately" if he changed his address because "[n]otices of hearing [would] be mailed to this address."  In addition, it notified Mauricio-Benitez that if he did not provide an address at which he could be reached during his removal proceedings, he would not be entitled to receive written notice of his hearing. The mailing address listed on the NTA was "4010 West Belfor**d** Apt. 705," whereas Mauricio-Benitez claims that his correct address at the time was "4010 West Belfor**t** Apt. 705."  According to Mauricio-Benitez, he provided the correct address, but an immigration officer introduced the spelling error when preparing the NTA.  There is no indication in the record that he corrected the address when he received the NTA.

The following month, the DHS sent a NOH to Mauricio-Benitez at the West Belford address via regular mail.  The NOH informed Mauricio-Benitez that his removal hearing had been scheduled for September 21, 2004, and again warned him of the consequences of failing to appear.  Mauricio-Benitez

2

did not attend the hearing, and the IJ entered an *in absentia* order for his removal to El Salvador.

Almost thirteen years later, in June 2017, Mauricio-Benitez filed a motion to reopen his removal proceedings and rescind the *in absentia* removal order. He alleged that he had never received notice of his removal hearing, and, as a result, he did not find out about the order until his attorney filed a Freedom of Information Act (FOIA) request in January 2017. He also contended that he first learned of the spelling error in the mailing address on his NTA through the FOIA request.

The IJ denied Mauricio-Benitez's motion. She first observed that Mauricio-Benitez "did not provide the Court with an address change, as required by the regulations," to correct the NTA or when he moved from the address listed on the NTA six months later. Thus, the IJ found that the immigration court was only required to send the NOH to the last mailing address it had on file—the West Belford address. Accordingly, Mauricio-Benitez had received proper notice of his removal hearing under 8 U.S.C. § 1229(a)(2).

Mauricio-Benitez appealed the IJ's decision to the BIA, again arguing lack of notice of the removal hearing. The BIA first observed that Mauricio-Benitez's NOH had been mailed to the address listed on the NTA and that the NOH had not been returned as undeliverable. It then dismissed the appeal on two alternative grounds: (1) Mauricio-Benitez had not provided sufficient evidence to rebut the presumption of delivery of the NOH; and (2) Mauricio-Benitez was "not entitled to actual notice of his hearing" because he had failed to correct the mistake in the address on the NTA with the immigration court. Mauricio-Benitez timely filed a petition for review.

No. 17-60792

## II.

Motions to reopen removal proceedings are disfavored, *Altamirano-Lopez v. Gonzales*, 435 F.3d 547, 549 (5th Cir. 2006), and we review BIA denials of these motions under a "highly deferential abuse-of-discretion standard." *Hernandez-Castillo v. Sessions*, 875 F.3d 199, 203 (5th Cir. 2017). We may only overturn a BIA decision if it is "capricious, without foundation in the evidence, or otherwise so irrational that it is arbitrary rather than the result of any perceptible rational approach[.]" *Id.* at 203–04 (quoting *Gomez-Palacios v. Holder*, 560 F.3d 354, 358 (5th Cir. 2009)). Under the substantial-evidence test, we may only overturn the BIA's findings of fact if the evidence compels a contrary conclusion. *Gomez-Palacios*, 560 F.3d at 358. We review questions of law *de novo*. *Id.* We will focus our review on the BIA's order, as we may only evaluate the IJ's underlying decision if it influenced the BIA's determination. *Hernandez-Castillo*, 875 F.3d at 204.

## III.

Mauricio-Benitez advances two arguments in his petition for review: (1) the BIA erred in finding that he was not entitled to actual notice of his removal hearing; and (2) the BIA's conclusion regarding the presumption of delivery of his NOH was contrary to this court's and the BIA's prior decisions. We will address each of his arguments in turn.

## A.

Under 8 U.S.C. § 1229(a)(1), an alien who is subject to removal proceedings is entitled to written notice of "[t]he time and place at which the proceedings will be held." 8 U.S.C. § 1229(a)(1)(G)(i). A written notice is deemed sufficient if the government "provide[s it] at the most recent address provided" to the immigration court by the alien. *Id.* § 1229a(b)(5)(A). However, if the alien fails to provide a mailing address in accordance with the statutory requirements, he is not entitled to written notice of his removal hearing. *Id.*

§ 1229a(5)(B). The alien must also be informed of the consequences of failing to appear after receiving notice, *id.* § 1229(a)(1)(G)(ii), including that the immigration judge may enter an *in absentia* order of removal against him. *Id.* § 1229a(b)(5)(A). An *in absentia* removal order entered without proper notice to the alien may be rescinded at any time upon a motion to reopen, and it is the alien's burden to demonstrate that he did not receive notice in accordance with § 1229(a). *Id.* § 1229a(b)(5)(C)(ii).

In concluding that Mauricio-Benitez was not entitled to actual notice of his removal hearing, the BIA observed that he had been personally served with a NTA emphasizing the significance of the mailing address requirements, but he still took no action to inform the immigration court about the spelling error. Mauricio-Benitez counters that the NTA and relevant regulations only required him to notify the immigration court of a *change* in address, not a correction to the address already on file. He further insists that even if he had such a duty to correct his address, he "had no reason to believe" the address on file was incorrect until he filed his FOIA request in 2017. He argues this even though the NTA itself, which he received in person, spelled the address incorrectly.

Our decision in *Gomez-Palacios* forecloses Mauricio-Benitez's argument. *See* 560 F.3d 354. In that case, a NTA was personally served on the alien; the NTA detailed the alien's obligations regarding his mailing address and the consequences of failing to appear at his removal hearing; and a NOH was mailed to the address provided by the alien on the NTA. *Id.* at 356–57. However, because the alien had relocated without updating his mailing address with the immigration court, he did not receive the NOH, and he was ordered removed *in absentia* when he failed to appear. *Id.* at 357. More than four years later, the alien moved to reopen the removal proceedings on the basis of lack of notice. *Id.*

No. 17-60792

Upholding the BIA's dismissal of the alien's appeal, we concluded that "an alien's failure to receive actual notice of a removal hearing due to his neglect of his obligation to keep the immigration court apprised of his current mailing address does not mean that the alien 'did not receive notice' under § 1229a(b)(5)(C)(ii)." *Id.* at 360–61. Thus, because the lack of notice was a result of the alien's failure to update his mailing address with the immigration court, his removal order would not be rescinded on that basis. *Id.* at 361.

In several unpublished cases, we have extended the rule in *Gomez-Palacios* to cases where the alien did not fail to inform the immigration court of a *change* in address, but instead failed to correct an *error* in the address listed on the NTA. *See Mejia-Urbina v. Sessions*, 712 F. App'x 469, 469–70 (5th Cir. 2018) (denying petition for review when the record contained no evidence that the alien had attempted to notify the immigration court that the address on his NTA was incorrect and asserted only that "an immigration officer wrote [his] address incorrectly"); *Osorio-Hernandez v. Lynch*, 602 F. App'x 194, 194 (5th Cir. 2015) ("[I]f the alien moves or discovers that an incorrect address has been provided, he has an obligation to provide the immigration court with his current address information."). We do so again today. As we recognized in *Mejia-Urbina* and *Osorio-Hernandez*, an alien's statutory obligation to keep the immigration court apprised of his current mailing address includes an obligation to correct any errors in that address listed on the NTA. Failure to receive notice of a removal hearing as a result of such an error is not grounds to reopen a removal proceeding or rescind an *in absentia* removal order.[1]

---

[1] The Supreme Court's recent decision in *Pereira v. Sessions*, 138 S. Ct. 2105 (2018), does not impact this conclusion. As the Supreme Court emphasized, "[t]he narrow question in [that] case" was whether a NTA that does not specify the time or place of the removal hearing triggers the "stop-time rule" for purposes of a cancellation of removal. *Id.* at 2109–10; *see also id.* at 2113 ("[T]he dispositive question in this case is much narrower[.]"). But cancellation and reopening are two entirely different proceedings under immigration law

No. 17-60792

Here, Mauricio-Benitez was personally served with a NTA listing a mailing address that he contends was misspelled. Thus, he had notice of the error in his address upon receipt of the NTA on June 13, 2004—more than a month before the NOH was mailed to the misspelled address on July 21, 2004. The NTA warned Mauricio-Benitez of the importance of maintaining an accurate address with the immigration court, the consequences of failing to appear at his removal hearing, and that he would not be entitled to receive notice of his hearing if he did not provide an address at which he could be reached. Regardless of how the error in his address was introduced, Mauricio-Benitez had an obligation to correct that error with the immigration court. He failed to do so, and as a result he was not entitled to actual notice of his removal hearing. The BIA's conclusion on this point was not wrong, much less "capricious" or "without foundation in the evidence," so we must leave it undisturbed.

---

with different standards of review. *Compare Tula-Rubio v. Lynch*, 787 F.3d 288, 290–91 (5th Cir. 2015), *with Hernandez-Castillo*, 875 F.3d at 203–04.

Cancellation is a form of discretionary relief that an immigration court may award to aliens "who are subject to removal proceedings and have accrued 10 years of continuous physical presence in the United States[.]" *Id.* at 2109. An alien's period of continuous physical presence for purposes of cancellation ends when the alien is served a NTA that fully complies with the statutory requirements. *Id.* The filing of the NTA, in turn, initiates removal proceedings against the alien, during which the alien may request cancellation. *See* 8 C.F.R. § 1003.14(a); *id.* § 1003.13; 8 U.S.C. § 1229b(b). In contrast, it is only after these proceedings have concluded—which in some cases may be by the IJ's issuance of an *in absentia* removal order—that an alien may file a motion to reopen the proceedings on one of the statutory grounds. *See* 8 U.S.C. § 1229a(b)(5)(A); *id.* § 1229a(b)(5)(C); *id.* § 1229a(c)(7).

Because the issues in this case pertain only to reopening, *Pereira*'s rule regarding cancellation is inapplicable. *See, e.g., Ramat v. Nielsen*, 317 F. Supp. 3d 1111, 1116–17 (S.D. Cal. 2018) (declining to read *Pereira* as applying more broadly than in stop-time rule cancellation cases); *United States v. Ibarra-Rodriguez*, No. CR-18-190-M, 2018 WL 4608503, at *3 (W.D. Okla. Sept. 25, 2018) (finding *Pereira* distinguishable because "the 'stop-time rule' [was] not at issue" in the case).

7

No. 17-60792

B.

Even if Mauricio-Benitez had been entitled to actual notice of his removal hearing, we agree with the BIA's determination that he has not presented sufficient evidence to rebut the presumption that the NOH was properly delivered.[2]

On a motion to reopen for lack of notice, "the focus of the rescission inquiry . . . is on the actual receipt of the required notice and not whether the notice was properly mailed." *Gomez-Palacios*, 560 F.3d at 360. To assist in this inquiry, when a NOH is served via certified mail, a strong presumption of effective service applies that may only be rebutted by the affirmative defense of nondelivery. *Hernandez v. Lynch*, 825 F.3d 266, 269 (5th Cir. 2016). If the NOH is instead served by regular mail, we still apply a presumption of effective delivery, but it is somewhat weaker than the certified-mail presumption. *Id.*; *see also In re M-R-A-*, 24 I. & N. Dec. 665, 672–73 (B.I.A. 2008) (noting that there is "slight" presumption of receipt of regular mail). In *In re M-R-A-*, the BIA set out a non-exhaustive list of factors courts may consider in determining whether this weaker presumption was rebutted, including "the [alien's] affidavit;" "the [alien's] actions upon learning of the *in absentia* order, and whether due diligence was exercised in seeking to redress the situation;" and "any other circumstances or evidence indicating possible nonreceipt of notice." 24 I. & N. Dec. at 674. The BIA emphasized the discretionary nature of the inquiry, stating that courts are not "obliged to grant a motion [to reopen] even if every type of evidence is submitted." *Id.*

The BIA's conclusion on this issue focused on the absence of evidence in the record to prove that Mauricio-Benitez actually resided at the West Belfort

---

[2] This alternative holding is not dicta. In this circuit, "alternative holdings are binding precedent and not *obiter dicta*." *Whitaker v. Collier*, 862 F.3d 490, 496 n.14 (5th Cir. 2017) (quoting *United States v. Bueno*, 585 F.3d 847, 850 n.3 (5th Cir. 2009)).

address when the NOH was mailed; that the immigration officers did in fact misspell his address; that a West Belford address identical to the claimed West Belfort address existed; or that the post office would not have delivered the NOH to West Belfort despite the error.  Emphasizing that neither the NOH nor the *in absentia* order was returned as undeliverable, the BIA found that the presumption of delivery of the NOH was not rebutted.

Mauricio-Benitez insists that the BIA's analysis misapplied our decision in *Maknojiya v. Gonzales*, 432 F.3d 588 (5th Cir. 2005), and the BIA's own precedent in *In re M-R-A-*, 24 I. & N. Dec. 665.  With respect to *Maknojiya*, Mauricio-Benitez focuses on the following rule, summarized in *Hernandez*: "[W]hen service is furnished via regular mail, an alien's statement in an affidavit that is without evidentiary flaw may be sufficient to rebut the presumption of effective service." *Hernandez*, 825 F.3d at 269 (citing *Maknojiya*, 432 F.3d at 589–90).  He argues that because he has submitted an affidavit stating that he did not receive the NOH, and because the BIA did not find an evidentiary flaw in the affidavit itself, he has rebutted the presumption of delivery on this basis alone.  Mauricio-Benitez also contends that the BIA failed to consider his affidavit or his "due diligence after learning of his removal order" as required by *In re M-R-A-* and instead relied on factors not set out in *In re M-R-A-* such as his failure to corroborate his claims about living at the West Belfort address.  We disagree with both arguments.

Beginning with *Maknojiya*, Mauricio-Benitez fails to acknowledge that the court there relied not only upon Maknojiya's affidavit, but also on its finding that "the record [did] not indicate that Maknojiya was attempting to avoid the immigration proceedings" in granting the petition for review.  432 F.3d at 589–90.  Similarly, in *Hernandez*, even though the court found that the alien had submitted an affidavit without evidentiary flaw attesting to his nonreceipt of the NOH, the court considered other factors, including the alien's

due diligence upon learning of the *in absentia* order, and, importantly, the credibility of the statements in the alien's affidavit. 825 F.3d at 270–71. Thus, the BIA did not err in concluding that the presumption of delivery was not rebutted by Mauricio-Benitez's affidavit alone.

In addition, the BIA's analysis was consistent with its own decision in *In re M-R-A-*, which noted that courts "may consider a variety of factors"—"not limited to" those listed—to determine whether an alien has rebutted the presumption of delivery. 24 I. & N. Dec. at 674. The BIA considered permissible factors such as the fact that the NOH was not returned undelivered, *see Hernandez*, 825 F.3d at 270–71 (discussing this factor), and the credibility of the statements in Mauricio-Benitez's affidavit. *See id.* at 270 ("None of this is to say . . . that the BIA should not weigh the credibility of an affidavit in determining whether an alien has rebutted the presumption of notice. . . . [I]t should."). In fact, the BIA's analysis focused on the credibility of the affidavit—whether, given the lack of evidence in the record corroborating the West Belfort error, the statements in the affidavit were sufficient to rebut the presumption of delivery.

Finally, the BIA did not err in refusing to permit reopening despite the fact that Mauricio-Benitez sought counsel and filed his motion soon after discovering the *in absentia* order through a FOIA request. While the BIA granted the motion to reopen in *In re M-R-A-* in part on this basis, the alien there filed his motion less than a month after his failure to appear at his removal hearing. 24 I. & N. Dec. at 666; *see also Hernandez*, 825 F.3d at 267 (NTA served via regular mail and motion to reopen filed within three years). In contrast, Mauricio-Benitez—despite having been personally served with a NTA informing him that he would receive a notice setting a hearing date and time—made no effort to correct his NTA, update his mailing address with the court when he moved six months after receiving the NTA, or otherwise follow

up on his immigration status for thirteen years. *See Sosa-Perdomo v. Lynch*, 644 F. App'x 320, 321 (5th Cir. 2016) (considering nine-year delay before moving to reopen as evidence of a lack of diligence); *Rahim v. Holder*, 552 F. App'x 358, 360 (5th Cir. 2014) (same with eight-year delay). He cannot now complain that the BIA failed to grant him relief at the thirteenth hour.

Accordingly, the BIA's determination that Mauricio-Benitez failed to rebut the presumption of delivery of regular mail was not "irrational" or "arbitrary." As a result, we must uphold its dismissal of his appeal.

## IV.

For the reasons discussed, Mauricio-Benitez's petition for review is DENIED.