HON. KEITH P. ELLISON, UNITED STATES DISTRICT JUDGE
Mr. Santiago Tzul, a citizen of Guatemala,[1] was first placed in removal proceedings on May 26, 2009, following his arrest on a DWI charge. (Doc. No. 21-2 at 12.) On June 6, 2009, he was released from the Harris County Jail into ICE custody. (Doc. No. 21-2 at 12.) On the same day, he was served with a notice to appear, ordering him to appear before an immigration judge at "5520 Greens Road Houston, TEXAS 77032," on "a date to be set" at "a time to be set." (Doc. No. 21-2 at 14.) Mr. Santiago Tzul appeared at his hearing[2] *787 and was ordered deported on June 16, 2009. (Doc. No. 21-2 at 16.) The record indicates that he was removed to Guatemala on August 12, 2009. (Doc. No. 21-2 at 19.) This removal order was reinstated twice, first on April 4, 2012, and again on April 1, 2013. (Doc. No. 21-2 at 19, 22.)
When Mr. Santiago Tzul was arrested in Houston on August 19, 2016, the Government again attempted to reinstate the removal order against him. (Doc. No. 21-2 at 25.) Mr. Santiago Tzul was convicted on a DWI charge and sentenced to three-years' incarceration. (Doc. No. 21-2 at 33.) At the end of his sentence, the Government filed an indictment against him for illegal reentry, which is the subject of this case. (Doc. No. 1.)
Pending before the Court is Defendant Santiago Tzul's motion to dismiss the indictment against him. (Doc. No. 13.) The Court understands Mr. Santiago Tzul's argument as follows: As a threshold matter, the statutory bar on collateral challenges to removal orders does not apply to jurisdictional arguments. Under Pereira v. Sessions , --- U.S. ----, 138 S.Ct. 2105, 201 L.Ed.2d 433 (2018), a putative "notice to appear" that does not include the date and time of the hearing is not considered a "notice to appear" at all. As a valid notice to appear is required to vest jurisdiction in the immigration court, the 2009 removal order is void. In the absence of a removal order, the Government cannot prove an element of the offense of illegal reentry, and the indictment must be dismissed. (Doc. No. 13.) The Government opposes this motion. (Doc. No. 21.)
Similar motions to dismiss have been filed around the country following the Supreme Court's decision in Pereira v. Sessions earlier this year. A number of federal courts have considered similar arguments, and have reached different conclusions. The Court has reviewed these decisions in the process of considering the pending motion.
I. ANALYSIS
As defined by 8 U.S.C. § 1326(a), the crime of illegal reentry requires the Government to prove that the defendant "(1) was an alien at the time of the alleged offense; (2) had been previously deported; (3) attempted to enter the United States; and (4) had not received the express consent of the Attorney General or the Secretary of the Department of Homeland Security." United States v. Jara-Favela , 686 F.3d 289, 302 (5th Cir. 2012). Mr. Santiago Tzul contests the Government's ability to prove the second of these elements.
A. JURISDICTIONAL CHALLENGES ARE NOT BARRED BY § 1326(D)
Section 1326(d) limits the ability of defendants charged with illegal reentry to collaterally attack an underlying deportation order.
In a criminal proceeding under this section, an alien may not challenge the validity of the deportation order described in subsection (a)(1) or subsection (b) unless the alien demonstrates that--
(1) the alien exhausted any administrative remedies that may have been available to seek relief against the order;
(2) the deportation proceedings at which the order was issued improperly deprived the alien of the opportunity for judicial review; and
(3) the entry of the order was fundamentally unfair.
*788 8 U.S.C. § 1326(d) (2018).
However, these bases for challenging an underlying removal order are not the only means available to criminal defendants. Jurisdiction must be established as a threshold matter before a court considers the merits of a case. See Steel Co. v. Citizens for a Better Environment , 523 U.S. 83, 94-96, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998) (citing Great Southern Fire Proof Hotel Co. v. Jones , 177 U.S. 449, 450-451, 20 S.Ct. 690, 44 L.Ed. 842 (1900) ). Courts have this duty sua sponte to assure themselves of their own jurisdiction because an order entered without jurisdiction is a nullity without legal effect. See Burnham v. Superior Court of California , 495 U.S. 604, 608-09, 110 S.Ct. 2105, 109 L.Ed.2d 631 (1990). Therefore, "any judgment may be collaterally attacked if it is void for lack of jurisdiction." Jacuzzi v. Pimienta , 762 F.3d 419, 420 (5th Cir. 2014) ; see also Matter of Reitnauer , 152 F.3d 341, 344 n.12 (5th Cir. 1998) ("It is true that (1) jurisdictional defects render a judgment void, and (2) void judgments are subject to collateral attack.").[3] Mr. Santiago Tzul's collateral attack on his removal order asserts that the order was void for lack of jurisdiction, and is not barred by § 1326(d). See United States v. Cruz-Jimenez , No. A-17-CR-00063, 2018 WL 5779491 at *2 (W.D. Tex. Nov. 2, 2018) ; see also United States v. Pedroza-Rocha , 3:18-CR-1286-DB, Doc. No. 53, 2018 WL 5646127 (W.D. Tex. Sept. 21, 2018) ; United States v. Virgen-Ponce , 320 F.Supp.3d 1164, 1166 (E.D. Wash. 2018).
B. JURISDICTION VESTS IN AN IMMIGRATION COURT UPON THE FILING OF A NOTICE TO APPEAR
The crux of Mr. Santiago Tzul's motion is that the failure to include the date and time of his hearing on his notice to appear deprived the immigration court of jurisdiction, making the 2009 removal order void. This argument relies on a regulation providing that "[j]urisdiction vests and proceedings commence before an immigration court when a charging document is filed with the immigration court." 8 C.F.R. § 1003.14(a) (2018). A charging document is defined as a "written instrument which initiates a proceeding before an Immigration Judge ... includ[ing] a Notice to Appear ...." 8 C.F.R. § 1003.13 (2018).
In contrast, the Government argues that § 1003.14(a) is merely a procedural rule. According to the Government, the immigration court's source of jurisdiction is actually the Immigration and Nationality Act ("INA"). See 8 U.S.C. § 1229(a)(1) ("An immigration judge shall conduct proceedings for deciding the inadmissibility or deportability of an alien.").
The text of both the regulation and the statute support Mr. Santiago Tzul's argument that § 1003.14(a) is exactly what it appears to be-a necessary trigger for the jurisdiction of an immigration court. The plain text of the statute is ordinarily *789 the best evidence of congressional intent. W. Va. Univ. Hosps., Inc. v. Casey , 499 U.S. 83, 102, 111 S.Ct. 1138, 113 L.Ed.2d 68 (1991), superceded by statute as recognized in Landgraf v. USI Film Prods. , 511 U.S. 244, 114 S.Ct. 1483, 128 L.Ed.2d 229 (1994). The INA indicated the purpose for which immigration judges were authorized, but did not define the contours of their jurisdiction. See 8 U.S.C. § 1229(a)(1) ("An immigration judge shall conduct proceedings for deciding the inadmissibility or deportability of an alien."). Instead, Congress delegated that power to the U.S. Attorney General. See 8 U.S.C. § 1003(g)(2) (assigning to the Attorney General the duty to "establish such regulations ... as the Attorney General determines to be necessary for carrying out this section"). Pursuant to this delegation, the Attorney General promulgated a regulation establishing the necessary condition upon which "jurisdiction" will "vest" in the immigration courts: the filing of a notice to appear. 8 C.F.R. § 1003.14(a) (2018). The Government does not persuade the Court to ignore the plain language of the statute and regulations and instead read § 1003.14(a) as a procedural rule. Thus, the Court "see[s] no reason to depart from the plain text of the regulations." See United States v. Cruz-Jimenez , No. A-17-CR-00063, 2018 WL 5779491 at *7 (W.D. Tex. Nov. 2, 2018).
C. PEREIRA IS NOT LIMITED TO THE STOP-TIME RULE
The parties urge the Court to adopt contrary definitions of a notice to appear. Mr. Santiago Tzul argues that Pereira v. Sessions , --- U.S. ----, 138 S.Ct. 2105, 201 L.Ed.2d 433 (2018), established that, at minimum, a document must provide the time and place of a hearing to qualify as a notice to appear, as required by 8 U.S.C. § 1229(a)(1)(G)(i). The Government responds that the holding of Pereira was narrow and applied only to the circumstances before the Court in that case: "whether a notice to appear that lacks a specific date and time for removal proceedings triggers the stop-time rule under 8 U.S.C. § 1229b(d)(1)(A)." (Doc. No. 21 at 7.) According to the Government, Pereira is inapplicable here, because the regulation vesting jurisdiction upon filing of a proper charging document[4] is governed by the regulatory definition of a notice to appear, which does not require inclusion of the time and place of the hearing. See 8 C.F.R. § 1003.15 (2018). As evidence, the Government points out that the statute at issue in Pereira specifically cross-referenced § 1229(a), unlike the regulation at issue in this case.
Mr. Santiago Tzul has the better argument on this point. The Court reads Pereira as first holding that a document is only a notice to appear if it includes the time and place of the hearing, and then applying that holding to the stop-time rule. See United States v. Cruz-Jimenez , No. A-17-CR-00063, 2018 WL 5779491, at *6 (W.D. Tex. Nov. 2, 2018) (" Pereira does not say that a putative notice to appear that omits the time and place of a removal hearing fails to trigger the stop-time rule-it says that such a document is not a notice to appear at all .") The Pereira Court considered and rejected the Government's argument that the proper definition of "notice to appear" is the regulatory definition given in 8 C.F.R. § 1003.15(b). Pereira , 138 S.Ct. at 2111. The Court emphasized that conveying the date and time of a hearing was "an essential function of a notice to appear," ids="12612847" index="39" url="https://cite.case.law/s-ct/138/2105/">id. at 2115, and that *790 excluding that information "unquestionably would deprive the [notice to appear] of its essential character," id. at 2116-17 (internal quotation marks omitted). Relying on the canon of statutory interpretation that "identical words used in different parts of the same act are intended to have the same meaning," the Court held that "when the term 'notice to appear' is used elsewhere in the statutory section, including as the trigger for the stop-time rule , it carries with it the substantive time-and-place criteria required by § 1229(a)." Id. at 2115-16 (emphasis added). Pereira thus did not confine itself to the context of the stop-time rule, but instead established minimum standards that must be applied to all notices to appear.
The Government is correct that the jurisdictional grant at the center of this case is set forth in regulations referencing a "notice to appear," and not in statutes, as in Pereira. 8 C.F.R. §§ 1003.13, 1003.14(a) (2018). This does not mean the regulatory definition can circumvent the statutory requirements. Pereira 's language was broad, relying on both statutory interpretation and "common sense." See Pereira , 138 S.Ct. at 2110 ("The plain text, the statutory context, and common sense all lead inescapably and unambiguously to that conclusion."); id. at 2115 ("If the three words 'notice to appear' mean anything in this context, they must mean that, at a minimum, the Government has to provide noncitizens 'notice' of the information, i.e. , the 'time' and the 'place,' that would enable them 'to appear' at the removal hearing in the first place."); United States v. Pedroza-Rocha , 3:18-CR-1286-DB, Doc. No. 53, 2018 WL 5646127 (W.D. Tex. Sept. 21, 2018). Thus, the Court interprets Pereira as requiring that every notice to appear provide the date and place of the hearing, including a notice to appear that serves as a charging document vesting jurisdiction in the immigration court. See e.g. , United States v. Cruz-Jimenez , No. A-17-CR-00063, 2018 WL 5779491, at *6 (W.D. Tex. Nov. 2, 2018) ("[A]llowing a notice to appear that omits information specifying the time and place of removal proceedings to function as a charging document would run contrary to Pereira , the clear and unambiguous intent of Congress, and the rule that inconsistent regulations will not control over the statute authorizing those regulations.").
The Court is similarly unconvinced by the Government's suggestion that it should contort its reading of Pereira to avoid the possible consequences of enforcing the time-and-place requirement. The Pereira Court appeared to contemplate the potentially wide-ranging ramifications of its decision. The Court noted that "the Department of Homeland Security (DHS), at least in recent years, almost always serves noncitizens with notices that fail to specify the time, place, or date of initial removal hearings whenever the agency deems it impracticable to include such information." Id. at 2111. Despite acknowledging that the practice it invalidated was overwhelmingly routine, the Court did not cabin its language, but instead stated broadly that "[a] putative notice to appear that fails to designate the specific time or place of the noncitizen's removal proceedings is not a 'notice to appear' under section 1229(a)...." Id. at 2113-14. Thus, the Pereira Court seemed aware of the potential for its holding to affect cases outside the narrow context of the stop-time rule.
The Government also argues that the fact that the Pereira Court remanded the case for further proceedings is evidence that Pereira 's time-and-place requirement is not jurisdictional. However, Mr. Santiago Tzul's argument is about the jurisdiction of the immigration courts, not the Supreme Court. While federal courts *791 must ensure they have jurisdiction before ruling on a dispute, there is no obligation to raise arguments sua sponte that would question the validity of a prior underlying judgment issued by another court entirely. See United States v. Cruz-Jimenez , 2018 WL 5779491 at *7 (W.D. Tex. Nov. 2, 2018) (rejecting the government's argument because "the Supreme Court had no reason to consider the jurisdiction of the immigration court in Pereira 's removal proceedings.").
Other courts in the Fifth Circuit have considered this issue. The Western District of Texas repeatedly found that the failure to include the date and time of the hearing in a defendant's notice to appear deprived the immigration court of jurisdiction and required dismissal of the indictment. United States v. Lopez-Urgel , No. 1:18-CR-0310 (Doc. No. 30), 2018 WL 5984845 (W.D. Tex. Nov. 14, 2018) ; United States v. Cruz-Jimenez , No. A-17-CR-00063, 2018 WL 5779491 (W.D. Tex. Nov. 2, 2018) ; United States v. Alfredo Valladares , No. A-17-CR-00156-SS, Doc. No. 44 (W.D. Tex. Oct. 30, 2018); United States v. Pedroza-Rocha , 3:18-CR-1286-DB, Doc. No. 53, 2018 WL 5646127 (W.D. Tex. Sept. 21, 2018).
The Court recognizes that a number of judges outside the Fifth Circuit have rejected Mr. Santiago Tzul's argument. See e.g. , United States v. Ibarra-Rodriguez , 2018 WL 4608503 (W.D. Okla. Sept. 25, 2018) (finding that failure to include time and date on the notice to appear was a statutory defect cured by defendant's appearance at his hearing and that Pereira was inapplicable); United States v. Hernandez-Ruiz , 1:17-CR-0226 (N.D. Ga. Sept. 21, 2018) (ruling in a short order that Pereira was inapplicable); United States v. Ornelas-Dominguez , 5:18-CR-0110 (C.D. Cal. Aug. 10, 2018) (finding that failure to include time and date on the notice to appear was a statutory defect cured by defendant's appearance at his hearing); Ramat v. Nielsen , 317 F.Supp.3d 1111 (S.D. Cal. 2018) (holding that Pereira did not "suggest[ ] that a failure to specify the date and time of removal proceedings in 8 U.S.C. § 1229(a) voids the commencement of removal proceedings"). Many of these courts found that the failure to include the time and date in the notice to appear was merely a statutory defect cured by a subsequent notice of hearing issued to the noncitizen, or by the noncitizen's appearance at the hearing. The Court finds that this analysis improperly analogizes removal orders to criminal indictments, especially in its failure to account for the substantial differences in the scope of jurisdiction between Article III and non-Article III courts.
However, there is some support in Fifth Circuit precedent for the argument that defects in a notice to appear are curable. In Gomez-Palacios v. Holder , the Fifth Circuit considered a noncitizen's appeal from the BIA's denial of his motion to reopen his order of removal. 560 F.3d 354 (5th Cir. 2009). Gomez-Palacios argued that he was improperly ordered removed in absentia without ever having received the required notice to appear. Id. at 356-57. He was originally served with a notice to appear lacking a time or date for his hearing, and subsequent notice was returned as undeliverable. Id. There are several important differences between Gomez-Palacios and the issue before the Court. First, the standard of review in Gomez-Palacios was "a highly deferential abuse-of-discretion standard," ids="3429287" index="57" url="https://cite.case.law/f3d/560/354/">id. at 358. Second, Gomez-Palacios held only that a second notice of hearing may cure a defect in the original notice to appear for the purposes of the statutory notice requirement, without mentioning jurisdiction. Therefore, Gomez-Palacios presents no bar to granting Mr. Santiago Tzul relief. See *792 United States v. Cruz-Jimenez , 2018 WL 5779491 (W.D. Tex. Nov. 2, 2018).
A case similar to Gomez-Palacios was recently decided by the Fifth Circuit. In Mauricio-Benitez , the Circuit denied a petition for review of an order of the Board of Immigration Appeals ("BIA") which refused to reopen a proceeding in which the noncitizen claimed he never received actual notice of his removal hearing due to a typo in his mailing address. Mauricio-Benitez v. Sessions , 908 F.3d 144 (5th Cir. 2018). The court found that Mauricio-Benitez had an obligation to update his mailing address, and had failed to rebut the presumption of delivery of notice of hearing. Id. at 145-46. The Government points specifically to the first footnote in this case, which declines to apply Pereira . Id. at 148 n.1. In that footnote, the court characterized Pereira as deciding only "whether a[n] NTA that does not specify the time or place of the removal hearing triggers the 'stop-time rule' for purposes of a cancellation of removal." Id. Further, the court emphasized that "cancellation and reopening are two entirely different proceedings under immigration law with different standards of review." Id. at 148 n.1.
The Government interprets this footnote as confining Pereira to the context of cancellation of removal and the stop-time rule. The Court disagrees. The discussion of different standards of review assumes that there is a valid judgment to which appellate courts can defer. It does not appear that the parties presented any arguments about jurisdictional deficiencies in this case, and the court was under no obligation to decide sua sponte whether the immigration court had jurisdiction, since it need only be concerned with its own jurisdiction to decide the case at hand. This difference is critical.
The Court finds that Pereira 's time-and-place requirement applies to the regulation vesting jurisdiction in an immigration court. Mr. Santiago Tzul's 2009 removal order was thus issued ultra vires and is void. See e.g. , United States v. Cruz-Jimenez , No. A-17-CR-00063, 2018 WL 5779491 at **2, 7 (W.D. Tex. Nov. 2, 2018) (citing Matter of Reitnauer , 152 F.3d 341, 344 n.12 (5th Cir. 1998) ("It is true that [ ] jurisdictional defects render a judgment void ....") ). As the 2009 removal order was invalid, the government cannot meet its burden to prove an element of the offense, and the indictment should be dismissed. Id. at *8.
II. CONCLUSION
After considering the parties' filings and the applicable law, the Court finds that Mr. Santiago Tzul's 2009 removal order was entered without jurisdiction and is thus void. The Court holds that Defendant Santiago Tzul's Motion to Dismiss is GRANTED.
IT IS SO ORDERED.

Although the Government's response states that Mr. Santiago Tzul is "a citizen of Mexico" (Doc. No. 21 at 2), the records in the case indicate that he was a native and citizen of Guatemala, (Doc. No. 21-2 at 11, 14, 16).

It appears that Mr. Santiago Tzul remained in ICE custody between June 6 and his removal hearing on June 16. The notice to appear listed his residence as the "Houston Service Processing Center," the removal order was delivered "c/o Custodial Officer," and his warrant for removal was stamped "detained at Polk," a detention center outside Houston. (Doc. No. 21-2 at 14, 15-16.) The record contains no separate notice of hearing. Thus, Mr. Santiago Tzul was likely informed of and brought to his removal hearing by ICE.

This pronouncement applies to Article III and non-Article III courts alike. The Fifth Circuit in Jacuzzi v. Pimienta considered "whether the district court had subject-matter jurisdiction to hear the collateral challenge to the bankruptcy court's exercise of personal jurisdiction." 762 F.3d 419, 420 (5th Cir. 2014). In concluding that "any judgment may be collaterally attacked if it is void for lack of jurisdiction," the Court noted that "[o]n what grounds that collateral attack is made determines whether there is federal-question jurisdiction. Federal courts have federal-question jurisdiction to entertain collateral attacks on military tribunals-which, like bankruptcy courts, are Article I courts -for lack of jurisdiction." Id. at 421 (emphasis added) (citing Schlesinger v. Councilman , 420 U.S. 738, 747-48, 95 S.Ct. 1300, 43 L.Ed.2d 591 (1975) ).

As described above, the Government contests that this regulation is the source of the immigration court's jurisdiction. The Government argues that the INA confers jurisdiction on the immigration courts. (Doc. No. 21 at 10.)