# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

No. 18-60429

United States Court of Appeals
Fifth Circuit

**FILED**

November 8, 2019

Lyle W. Cayce
Clerk

SANG HUI JEON,

> Petitioner,

v.

WILLIAM P. BARR, U.S. ATTORNEY GENERAL,

> Respondent.

Petition for Review of the Order of the
Board of Immigration Appeals
BIA No. A029 943 276

Before ELROD, WILLETT, and OLDHAM, Circuit Judges.

PER CURIAM:*

Each year, tens of thousands of undocumented immigrants are released on their own recognizance. Many attend their immigration court hearings. Ms. Jeon did not, and the Government issued a deportation order in her absence. She petitions, for the second time, for review of an order by the Board of Immigration Appeals ("BIA") refusing to reopen her deportation proceedings. For the second time, we deny relief.

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 18-60429

I.

In *Jeon v. Holder* ("*Jeon I*"), 354 F. App'x 50 (5th Cir. 2009), we summarized the circumstances leading up to Ms. Jeon's first motion to reopen:

> Jeon is a native and citizen of South Korea. On October 20, 1990, Immigration and Naturalization Service ("INS") agents arrested Jeon at the El Paso International Airport because she entered the United States without inspection. Jeon was personally served with an "Order to Show Cause, Notice of Hearing, and Warrant for Arrest of Alien" ("OSC") ordering Jeon to appear for a hearing before an immigration judge "at a time and date to be set later." The OSC listed the address Jeon provided—that of a relative in New Jersey—and advised Jeon that "[f]ailure to attend the hearing at the time and place designated hereon may result in a determination being made by the Immigration Judge in your absence." Jeon was thereafter released on her own recognizance.
>
> On November 13, 1990, the Office of the Immigration Judge sent a Notice of Master Calendar Hearing ("notice") via ordinary mail to Jeon at the New Jersey address she provided. Jeon did not appear at the hearing and a deportation order was entered against her *in absentia.* On December 5, 1990, the Office of the immigration judge also sent a copy of the deportation order via ordinary mail to Jeon at the New Jersey address. The record indicates that INS correspondence sent to the New Jersey address via certified mail on January 31, 1991 was returned undeliverable.

*Id.* at 52.

In *Jeon I*, Ms. Jeon revealed that she remained at the New Jersey address "for only one week after her release in El Paso, [and] thereafter moved to New York." *Id.* But she claimed that the deportation hearing and order notices never reached her or the New Jersey address, and requested that the BIA reopen the proceedings. The BIA declined. *Id.* We dismissed her previous BIA appeal because she failed to offer evidence of non-receipt. *Id.* at 53.

After we decided *Jeon I*, Ms. Jeon hired a new lawyer, blamed the previous one for the deficiencies in her original motion, and filed a second motion to reopen. This time, she included affidavits from her aunt and her cousin. They show, Ms. Jeon asserts, that the hearing notice and deportation

No. 18-60429

order were never sent to the New Jersey address. And, according to Ms. Jeon, this means that there was no "reasonable cause" to order her removed *in absentia. See* 8 U.S.C. § 1252(b) (1988). The BIA rejected this reading of the evidence and statute, finding that her failure to notify the government of her change of address undercut her lack-of-notice argument.

## II.

First, the standard of review. Typically, we review the BIA's legal conclusions *de novo, Orellana-Monson v. Holder*, 685 F.3d 511, 517 (5th Cir. 2012), and findings of fact for substantial evidence, *Sharma v. Holder*, 729 F.3d 407, 411 (5th Cir. 2013).

When it comes to BIA denials of a motion to reopen, however, we apply a "highly deferential abuse-of-discretion-standard, regardless of the basis of the alien's request for relief." *Gomez-Palacios v. Holder*, 560 F.3d 354, 358 (5th Cir. 2009). Under this standard, we "must affirm the BIA's decision as long as it is not capricious, without foundation in the evidence, or otherwise so irrational that it is arbitrary rather than the result of any perceptible rational approach." *Id.*

## A.

Back to the merits. The pre-1992 version of 8 U.S.C. § 1252 governed Ms. Jeon's deportation hearing. *See Jeon I*, 354 F. App'x at 52; *In re Umesh Patel*, 2005 WL 1104181, at *1 (B.I.A. Mar. 18, 2005). That section "provide[d] that a deportation hearing may be conducted *in absentia* if an 'alien has been given a reasonable opportunity to be present' and 'without reasonable cause fails or refuses to attend.'" *Jeon I*, 354 F. App'x at 52 (quoting 8 U.S.C. § 1252(b)).

In some circumstances, an alien may show "reasonable cause" for her non-attendance by providing evidence that she never received notice of the deportation hearing. *Id.* at 53 (citing *Maknojiya v. Gonzales*, 432 F.3d 588, 590 (5th Cir. 2005) (per curiam)). In that vein, Ms. Jeon contends that her new

No. 18-60429

affidavits suffice to excuse her failure to attend her deportation hearing. They do not.

In *Maknojiya*, the petitioner also missed his deportation hearing. He had provided his current address to the government but argued (and provided affidavits to show) that he never received a hearing notice at that address. 432 F.3d at 589. We agreed that he had shown the notice never reached him or his counsel, and remanded to the BIA. *Id.* at 590.[1]

Ms. Jeon's case, however, does not involve a petitioner who waited for a letter that never came. When apprehended, Ms. Jeon admitted to entering the United States without inspection, and was charged with a violation of the Immigration and Nationality Act. Instead of placing her in detention, the government allowed Ms. Jeon to remain free in the United States. The only thing the Government required in exchange was that she provide a valid address for receiving notices, and update that address within ten days if she moved. *See* 8 U.S.C. § 1305.[2] Although Ms. Jeon enjoyed the benefit of this bargain—nearly twenty years in the country despite entering unlawfully—she did not uphold her end of it. In less than a week, she moved. But, in violation of § 1305, she did not notify the government. This was not some technical violation of the § 1305 ten-day requirement. According to Ms. Jeon, the first

---

[1] The deportation proceedings in *Maknojiya* were governed by 8 U.S.C. § 1229a, not § 1252, as here. 432 F.3d at 589. Section 1229a permits reopening "if the alien demonstrates that the alien did not receive notice." 8 U.S.C. § 1229a(b)(5)(C)(ii); *Maknojiya*, 432 F.3d at 589. Neither party has explained why the reasoning in a § 1229a case should be applied in one that is governed by § 1252. But even if it should, we are not persuaded that *Maknojiya* assists Ms. Jeon for the reasons below.

[2] Ms. Jeon argues that "she never received notice by anyone regarding her duty to report address change[s]." But she offers no binding authority for the proposition that the statutory duty arose only once she became aware of it. *Cf. Romero-Ramirez v. Barr*, 766 F. App'x 168, 173 (5th Cir. 2019) ("This circuit has never held that, under former § 1252(b), an OSC is required to advise an alien of his obligation to keep the government informed of his current address . . . . [I]n the Fifth Circuit, under former § 1252(b), the alien has the sole responsibility to keep the government informed of his current address.").

time she updated her address was in August 2000, nearly ten *years* after she moved.

As the BIA correctly observed, when Ms. Jeon violated her § 1305 statutory duty, she forfeited her argument regarding the sufficiency of the government's notice. *See United States v. Estrada-Trochez*, 66 F.3d 733, 736 (5th Cir. 1995) ("Although the INS is certainly to blame for its abysmal handling of [Appellant's] deportation, the ultimate fault lies with the Appellant for his failure to comply with [§ 1305,] a law that is essential to the administration of the INS."); *see also Perez-Perez v. Holder*, 485 F. App'x 11, 12 (5th Cir. 2012) (denying petition to review BIA refusal to reopen because Petitioner, who had received an OSC, violated "his obligation to ensure that the Immigration Court was aware of an address where he could be contacted"). The BIA did not err in rejecting Ms. Jeon's lack-of-notice argument.

## B.

Even if we agreed with Ms. Jeon that she had offered sufficient evidence under *Maknojiya* to show non-receipt, we would not resolve this case differently. An alien suffers no prejudice from deficient notice if, by virtue of her unannounced change of address, she would not have attended the hearing anyway. *See Estrada-Trochez*, 66 F.3d at 736; *see Gomez-Palacios*, 560 F.3d at 360 ("This court has repeatedly held . . . that an alien's failure to receive actual notice of a removal hearing due to his neglect of his obligation to keep the immigration court apprised of his current mailing address does not mean that the alien did not receive notice . . . ." (quotations omitted)).

On that point, the evidence Ms. Jeon offers—affidavits from her aunt and cousin in New Jersey—does little to help her. Ms. Jeon's aunt, who lived at the New Jersey address throughout 1990, is unequivocal: "Even if I received . . . a hearing notice, there was no way for me to reach [Ms. Jeon] because there was no cell phone or email in those days and I did not even have her address

in New York." Ms. Jeon's cousin, on the other hand, is adamant that "[i]f we did receive such mail, we would have contacted Sang Hui [Jeon]." But the cousin did not live at the New Jersey residence "from late 1990 to 1994." And she concedes that, after Ms. Jeon moved to New York, "we lost contact with Sang Hui for a long time, and only recently reconnected." Ms. Jeon herself admits that she "lost touch" with her aunt, and that it took her "countless attempts" to "reconnect."

As part of the decisionmaking process, the BIA was entitled to weigh the credibility of the affiants' statements. *See Mauricio-Benitez v. Sessions*, 908 F.3d 144, 150 (5th Cir. 2018). One interpretation of the affidavits—the interpretation the BIA appears to have adopted—is that they show that Ms. Jeon's New Jersey family members would not have been able to contact her if they had received a hearing notice. Given the competing evidence, we cannot say that the BIA was capricious, without foundation, or irrational when it determined that the "new evidence . . . [did] not assist [Ms. Jeon]."

C.

Ms. Jeon also asserts that the BIA failed "to consider all of the relevant evidence," including the promptness with which she brought her motion to reopen once she discovered the deportation order. *Hernandez v. Lynch*, 825 F.3d 266, 271 (5th Cir. 2016). Again, she is wrong. The BIA considered that Ms. Jeon had not "offered a coherent and persuasive explanation" for the four-year gap between learning about the order in 2003 and filing her first motion in 2007. And it noted that Ms. Jeon was informed of the existence of proceedings when she was personally served with the OSC in 1990, which made her failure to follow up inexcusable. We see no reason to set aside these factual determinations. *See Mauricio-Benitez*, 908 F.3d at 151 (prompt action after learning about a deportation order did not require reopening when

No. 18-60429

petitioner filed his motion thirteen years after being informed of the pendency of deportation proceedings).[3]

## D.

Finally, because the outcome of her first motion to reopen would have failed for the same reasons had Ms. Jeon presented her evidence then, she cannot show that her original lawyer's performance prejudiced the outcome of the case. Ms. Jeon's ineffective-assistance-of-counsel argument is therefore without merit. *See Miranda-Lores v. INS*, 17 F.3d 84, 85 (5th Cir. 1994).

\*    \*    \*

The petition for review is DENIED.

---

[3] In any event, evidence regarding the "alien's due diligence upon learning of the *in absentia* order" does not create an independent basis for reopening—it merely assists a petitioner in rebutting the presumption of notice. *Mauricio-Benitez*, 908 F.3d at 150. But we have already held that Ms. Jeon suffered no prejudice from deficient notice because she failed to update her address. *See* Part II.B, *supra*. So this evidence does little to advance her case, regardless of how much weight it is given.

7