# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 17-60254

United States Court of Appeals
Fifth Circuit

**FILED**
April 1, 2019

Lyle W. Cayce
Clerk

JOSE NICOLAS RAMOS-PORTILLO,

> Petitioner,

v.

WILLIAM P. BARR, U.S. ATTORNEY GENERAL,

> Respondent.

Petition for Review of an Order
of the Board of Immigration Appeals

Before JOLLY, ELROD, and WILLETT, Circuit Judges.

JENNIFER WALKER ELROD, Circuit Judge:

Jose Nicolas Ramos-Portillo, a native and citizen of El Salvador, petitions for review of an order of the Board of Immigration Appeals (BIA) that dismissed his appeal of the denial of his motion to reopen. We deny Ramos-Portillo's petition for review.

I.

In 1993, Ramos-Portillo entered the United States without inspection and was detained by the Immigration and Naturalization Service (INS) near Laredo, Texas. Immigration officials recorded Ramos-Portillo's information on Form I-213, entitled "Record of Deportable Alien," which listed "Canton

Paplonia, San Miguel, El Salvador" as his permanent residence but did not include a U.S. address.

The INS released Ramos-Portillo after personally serving him with an Order to Show Cause and Notice of Hearing (OSC), written in both English and Spanish. The OSC informed Ramos-Portillo that he was deportable for entering without inspection under Section 241(a)(1)(B) of the Immigration and Nationality Act and that a deportation hearing would "be calendared and notice provided by the office of the immigration judge." The OSC also stated that notice would be "mailed to the address provided by [Ramos-Portillo]." On its face, the OSC warned Ramos-Portillo that he "DID NOT PROVIDE A UNITED STATES ADDRESS" and that he was "required by law to provide immediately in writing an address . . . where [he could] be contacted." Immigration officials provided Ramos-Portillo with a Form EOIR-33, entitled "Change of Address Form," with which he could provide his current mailing address to the immigration court. Ramos-Portillo signed a certificate of service, acknowledging his receipt of the OSC.

During the four-month period after his release, Ramos-Portillo did not send the Form EOIR-33 to the immigration court and subsequently failed to appear at his deportation hearing. The immigration judge (IJ) determined that because Ramos-Portillo "failed to inform the Attorney General of [his] address, . . . no notice of the deportation hearing could be issued." Accordingly, the IJ ordered Ramos-Portillo to be deported *in absentia*.

More than 22 years later, Ramos-Portillo moved to reopen his proceedings and to rescind the *in absentia* deportation order. Ramos-Portillo insisted that he never received notice of the previous hearing and that there was no evidence that notice was sent to the Salvadoran address listed on the Form I-213. Therefore, Ramos-Portillo contended, he had "reasonable cause" for not appearing at the hearing. The IJ denied his motion, reasoning that the

immigration court was not required to mail the notice of the hearing because Ramos-Portillo "did not provide his address as required."

Ramos-Portillo appealed the IJ's denial of his motion to reopen to the BIA, which dismissed his appeal. The BIA concluded that "there [was] no evidence in the record[] that [Ramos-Portillo] provided an address to the Immigration Court prior to the issuance of his in absentia deportation order"; and therefore, "no separate notice of the hearing was required to be mailed to [Ramos-Portillo] by the court." The BIA further determined that Ramos-Portillo failed to establish that "providing a foreign address [was] sufficient or that certified mail could be delivered to a foreign address." "Even assuming that a foreign address was acceptable for the purpose of providing notice of his hearing," the BIA reasoned that Ramos-Portillo failed to establish that he provided a valid mailing address. Ramos-Portillo now petitions for review.

## II.

We review the denial of a motion to reopen under a highly deferential abuse-of-discretion standard. *Penalva v. Sessions*, 884 F.3d 521, 523 (5th Cir. 2018). We uphold the BIA's decision as long as it is not "capricious, irrational, utterly without foundation in the evidence, based on legally erroneous interpretations of statutes or regulations, or based on unexplained departures from regulations or established policies." *Id.* (quoting *Barrios-Cantarero v. Holder*, 772 F.3d 1019, 1021 (5th Cir. 2014)). We review the BIA's legal conclusions *de novo* "unless a conclusion embodies the [BIA's] interpretation of an ambiguous provision of a statute that it administers; a conclusion of the latter type is entitled to the deference prescribed by [*Chevron*]." *Singh v. Gonzales*, 436 F.3d 484, 487 (5th Cir. 2006). In reviewing the BIA's legal conclusions, if the text of the statute is clear, "that is the end of the matter; for the court, as well as the [BIA], must give effect to the unambiguously expressed

No. 17-60254

intent of Congress." *Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 842–43 (1984).

### III.

### A.

We begin with the relevant statutory framework. Because Ramos-Portillo's *in absentia* proceedings occurred in 1993, we apply the notice requirement set forth in 8 U.S.C. § 1252b (repealed 1996). Under the former § 1252b, an immigration court could order an alien who failed to attend his deportation hearing to be deported *in absentia*, if the government established "by clear, unequivocal, and convincing evidence that the written notice was so provided and that the alien [was] deportable." *Id.* § 1252b(c)(1). To satisfy the notice requirement, the government must have provided written notice—an OSC—in person or by certified mail, specifying the time and place of the hearing and the consequence of failing to attend the hearing. *Id.* § 1252b(a)(2)(A).

> Section 1252b(a)(1)(F) requires that an OSC further specify:
>
> (i) The requirement that the alien must immediately provide (or have provided) the Attorney General with a written record of an address and telephone number at which the alien may be contacted respecting proceedings under section 1252 of this title.
> (ii) The requirement that the alien must provide the Attorney General immediately with a written record of any change of the alien's address or telephone number.
> (iii) The consequences . . . of failure to provide address and telephone information pursuant to this subparagraph.

*Id.* § 1252b(a)(1)(F).[1] An alien may move to rescind an *in absentia* deportation order "upon a motion to reopen filed at any time if the alien demonstrates that

---

[1] The former § 1252b thus sets forth a notice requirement for the government that is largely identical to the current notice requirement in 8 U.S.C. § 1229a.

the alien did not receive notice in accordance with [§ 1252b(a)(2)]." *Id.* § 1252b(c)(3).

In turn, however, an alien has an affirmative duty to provide an "address . . . at which [she] may be contacted respecting [the deportation] proceedings," and any changes of address, to the Attorney General.[2] *Id.* § 1252b(a)(1)(F). Under the implementing regulation, "[i]f the alien's address is not provided on the [OSC], or if the address on the [OSC] is incorrect, the alien must provide to the [immigration court] where the [OSC] has been filed, within five days of service of the [OSC], a written notice of an address . . . on Form EOIR-33, change of address form." 8 C.F.R. § 3.15(c)(1) (1993).

An alien's failure to provide an address to the immigration court excuses the government's statutory obligation to provide written notice before initiating an *in absentia* proceeding. 8 U.S.C. § 1252b(c)(2) ("No notice shall be required . . . if the alien has failed to provide the address required under subsection (f)(2) of this section."). In applying the newer version of the statute, 8 U.S.C. § 1229(a), we have observed time and time again that "an in absentia removal order should not be revoked on the grounds that an alien failed to actually receive the required statutory notice of his removal hearing when the alien's failure to receive actual notice was due to his neglect of his obligation to keep the immigration court apprised of his current mailing address." *Hernandez-Castillo v. Sessions*, 875 F.3d 199, 204–05 (5th Cir. 2018) (quoting *Gomez-Palacios v. Holder*, 560 F.3d 354, 360–61 (5th Cir. 2009)); *see also Mauricio-Benitez v. Sessions*, 908 F.3d 144, 147 (5th Cir. 2018). The same rule applies to the predecessor statute, 8 U.S.C. § 1252b: an *in absentia* deportation

---

[2] The newer version of the statute imposes the same duty to provide a current mailing address. 8 U.S.C. § 1229(a)(1)(F); *Mauricio-Benitez v. Sessions*, 908 F.3d 144, 147 (5th Cir. 2018).

order will not be revoked for lack of notice if the alien failed to provide the immigration court with his current mailing address.[3]  *See id.* § 1252b(c)(2).

## B.

In interpreting § 1252b(a)(1)(F)(i), Ramos-Portillo argues that § 1252b(a)(1)(F)(i) plainly allows an alien to satisfy his obligation to provide an address to the immigration court by providing a foreign address, because § 1252b(a)(1)(F)(i) only requires an address "at which the alien may be contacted," which could be a foreign or U.S. address.  Assuming *arguendo* that *de novo* review applies without any deference to the BIA on its interpretation of § 1252b, we disagree with Ramos-Portillo that an alien may satisfy his obligation under § 1252b(a)(1)(F)(i) by providing a foreign address.[4]

In interpreting a statute, we do not look at a word or a phrase in isolation.  The meaning of a statutory provision "is often clarified by the remainder of the statutory scheme . . . because only one of the permissible meanings produces a substantive effect that is compatible with the rest of the law."  *Util. Air Regulatory Grp. v. E.P.A.*, 573 U.S. 302, 321 (2014) (quoting *United Sav. Ass'n of Tex. v. Timber of Inwood Forest Assocs., Ltd.*, 484 U.S. 365, 371 (1988)); *Matter of Lopez*, 897 F.3d 663, 670 n.5 (5th Cir. 2018) ("We ought to 'consider the entire text, in view of its structure and of the physical

---

[3] As we observed in *Mauricio-Benitez*, 908 F.3d at 148 n.1, the Supreme Court's decision in *Pereira v. Sessions*, 138 S. Ct. 2105 (2018), has no bearing on this appeal, because *Pereira* concerned the stop-time rule for cancellation of removal and this appeal concerns reopening.  "[C]ancellation and reopening are two entirely different proceedings under immigration law with different standards of review." *Id.*  Moreover, *Pereira*'s main thrust was that "[a] putative notice to appear that fails to designate the specific time or place of the noncitizen's removal proceedings is not a 'notice to appear under [the statute].'"  138 S. Ct. at 2113–14.  This appeal does not concern whether Ramos-Portillo's OSC constituted an OSC under the statute but rather whether Ramos-Portillo satisfied his duty to provide an address such that the immigration court was obligated to send another OSC.

[4] We need not resort to *Chevron* deference if "[t]he statutory text alone is enough to resolve [the question]."  *Pereira*, 138 S. Ct. at 2113–14.

and logical relation of its many parts.'" (quoting Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 167 (2012)).

We begin with the text of § 1252b(a)(1)(F)(i). *See Christiana Tr. v. Riddle*, 911 F.3d 799, 806 (5th Cir. 2018). Section 1252b(a)(1)(F)(i) requires not just any "address" or any "address . . . at which an alien may be contacted"; rather, it requires "an address . . . at which the alien may be contacted *respecting proceedings under section 1252 of this title*"—that is, deportation proceedings. 8 U.S.C. § 1252b(a)(1)(F)(i) (emphasis added).

That the text of § 1252b(a)(1)(F)(i) expressly contemplates that the address will be used for timely notice for deportation proceedings cuts against Ramos-Portillo's argument that a foreign address would suffice. A "deportation hearing is the usual means of proceeding against an alien already *physically in the United States.*" *Landon v. Plasencia*, 459 U.S. 21, 25 (1982) (emphasis added); *see also Deportation*, Black's Law Dictionary (6th ed. 1990) ("The transfer of an alien . . . *from the United States* to a foreign country." (emphasis added)). An alien whom the government seeks to deport from the United States for unlawfully entering the United States is necessarily found in the United States. *See Landon*, 459 U.S. at 25–26 ("[A] deportation hearing is usually held near the residence of the alien within the United States . . ."). The proposition that deportation concerns an alien *within* the United States is not only supported by "common sense," *Abramski v. United States*, 573 U.S. 169, 179 (2014) (looking to "common sense" in addition to other "tools of divining meaning"), but also by the fact that a separate *exclusion* process exists for "an alien outside the United States seeking admission," *Landon*, 459 U.S. at 25. Thus, because § 1252b(a)(1)(F)(i) concerns notifying an alien who is living in the United States and subject to deportation from the United States, an "address . . . at which the alien may be contacted respecting [deportation] proceedings" is a U.S. address.

Other contextual clues similarly support the conclusion that § 1252b(a)(1)(F)(i) requires a U.S. address. *See Davis v. Mich. Dep't of Treasury*, 489 U.S. 803, 809 (1989) (observing that courts must examine a statute "with a view to [the words'] place in the overall statutory scheme"); *United States v. Lauderdale Cty., Miss.*, 914 F.3d 960, 965 (5th Cir. 2019). Section 1252b includes the certified-mail provision that requires the immigration court to provide written notice "by certified mail to the alien or to the alien's counsel of record, if any . . . ." 8 U.S.C. § 1252b(a)(1). Section 1252b(f) further requires a return receipt which must be signed by the alien or a responsible person at the alien's address. *Id.* § 1252b(f); *Matter of Grijalva*, 21 I. & D. Dec. 27, 32 (B.I.A. 1999), *superseded by* 8 U.S.C. § 1229a. Although Ramos-Portillo contends that the government regularly sends mail to foreign addresses, he provides no support for the proposition that certified mail to El Salvador—with return receipt therefrom—is always available. On the other hand, certified mail to a U.S. address is presumably always available. Because we favor "[a] textually permissible interpretation that furthers rather than obstructs the document's purpose," Scalia & Garner, *Reading Law* at 63, the certified-mail provision also supports interpreting § 1252b(a)(1)(F)(i) as requiring a U.S. address.

In sum, applying the traditional tools of interpretation to § 1252b(a)(1)(F)(i) makes it clear that an alien must provide a U.S. address for receiving written notice regarding his deportation proceedings.

IV.

We now turn to the BIA's order dismissing Ramos-Portillo's appeal. The BIA determined that Ramos-Portillo failed to satisfy his obligation to provide an address to the immigration court. For the following reasons, we hold that the BIA did not abuse its discretion in dismissing Ramos-Portillo's appeal of the denial of the motion to reopen.

No. 17-60254

A.

The BIA did not abuse its discretion in concluding that the information that Ramos-Portillo provided to immigration officials—the names of his town and county in El Salvador—did not constitute a valid mailing address "at which [he] may be contacted respecting [deportation] proceedings." 8 U.S.C. § 1252b(a)(1)(F)(i). It was not irrational or capricious for the BIA to conclude that Ramos-Portillo—who entered the United States unlawfully, seeking to work and live in the United States, and whom the government sought to deport from the United States—could not be contacted in El Salvador regarding his deportation proceedings that would take place in the United States. *See id.*

Furthermore, the BIA did not act irrationally by observing that Ramos-Portillo's purported address is not a valid mailing address because it only included the names of his town and county in El Salvador without any street name or number. Such a facially incomplete set of address information would reasonably leave one to wonder whether it is even a valid address, much less an address that can be contacted by certified mail or used for timely notice for deportation proceedings. Although Ramos-Portillo asserts that his family in El Salvador could have received mail for Ramos-Portillo, there is no indication in the affidavit or elsewhere in the record that *certified mail* could be delivered to, or that a signed receipt could be returned from, El Salvador. *See id.* § 1252b(a)(1), (f). For these reasons, the BIA did not abuse its discretion in dismissing Ramos-Portillo's appeal.

B.

Even assuming *arguendo* that the town name constituted a valid mailing address, we hold, in the alternative, that the BIA did not abuse its discretion in dismissing Ramos-Portillo's appeal because even though he was served with an OSC that contained no address, he failed to follow up with an address

9

pursuant to the governing regulation.[5]  Under 8 C.F.R. § 3.15, if an OSC does not contain the alien's address, then § 3.15(c) specifically requires the alien to provide an address by filing a Form EOIR-33 with the immigration court where the charging document has been filed.  Ramos-Portillo's OSC did not contain any U.S. or foreign address and unambiguously warned Ramos-Portillo of his obligation to provide one and the consequences of his failure to do so.  However, Ramos-Portillo filed *nothing* with the immigration court or any immigration officials upon release, after the charging document was filed, or during the four-month period leading up to the *in absentia* proceeding.  *See Fuentes-Pena v. Barr*, 917 F.3d 827, 830 (5th Cir. 2019) (discussing the regulatory duty to provide an address to the immigration court after the charging document is filed and holding that the provision of change of U.S. address to the Immigration and Customs Enforcement before the charging document was filed was adequate).  In fact, for over 20 years, Ramos-Portillo made no attempt to provide the immigration court or any other immigration officials with an address or even make any inquiries about his proceedings.

We reject Ramos-Portillo's contention that he satisfied his obligation to provide an address because immigration officials recorded the name of his hometown in El Salvador on a Form I-213.  Here, regardless of what an immigration official recorded in his notes, what matters is that Ramos-Portillo was served with an OSC that did not contain any address but failed to follow up and provide an address.  Given his failure to provide an address pursuant the governing regulation, the immigration court was not required to mail a

---

[5] This alternative holding is not dicta.  In this circuit, "alternative holdings are binding precedent and not *obiter dicta.*"  *Whitaker v. Collier*, 862 F.3d 490, 496 n.14 (5th Cir. 2017) (quoting *United States v. Bueno*, 585 F.3d 847, 850 n.3 (5th Cir. 2009)); *see also Texas v. United States*, 809 F.3d 134, 178 n.158 (5th Cir. 2015).

separate notice, and the BIA did not abuse its discretion in dismissing his appeal.

## V.

Ramos-Portillo also asserts that the BIA abused its discretion in dismissing his appeal as the IJ's denial of his motion to reopen violates his due-process right to notice of deportation proceedings. We reject Ramos-Portillo's due-process claim. Although Ramos-Portillo is correct that "the Fifth Amendment entitles aliens to due process of law in deportation proceedings," *Reno v. Flores*, 507 U.S. 292, 306 (1993), "the failure to receive relief that is purely discretionary in nature does not amount to a deprivation of a liberty interest," *Assaad v. Ashcroft*, 378 F.3d 471, 475 (5th Cir. 2004) (quoting *Mejia Rodriguez v. Reno*, 178 F.3d 1139, 1146 (11th Cir. 1999)). "[T]he denial of discretionary relief does not rise to the level of a constitutional violation even if [the moving party] had been eligible for it." *Altamirano-Lopez v. Gonzales*, 435 F.3d 547, 550 (5th Cir. 2006) (second alteration in original) (quoting *Finlay v. INS*, 210 F.3d 556, 557 (5th Cir. 2000)). The relief that Ramos-Portillo seeks—the motion to reopen—is purely discretionary. *Id.* Accordingly, Ramos-Portillo had "no liberty interest at stake," and the BIA did not abuse its discretion in dismissing his appeal. *Hernandez-Castillo*, 875 F.3d at 205 (quoting *Gomez-Palacios*, 560 F.3d at 361 n.2).

## VI.

For the foregoing reasons, we DENY Ramos-Portillo's petition for review.