# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

No. 16-60847

United States Court of Appeals
Fifth Circuit

**FILED**

July 23, 2019

Lyle W. Cayce
Clerk

MELIDA TERESA LUNA-GARCIA,

> Petitioner,

v.

WILLIAM P. BARR, U.S. ATTORNEY GENERAL,

> Respondent.

Petition for Review of Order
of the Board of Immigration Appeals

Before JOLLY, ELROD, and WILLETT, Circuit Judges.

JENNIFER WALKER ELROD, Circuit Judge:

The panel opinion previously issued in this case is withdrawn, and the following opinion is substituted in its place.

Melida Teresa Luna-Garcia, a citizen of Guatemala, petitions for review of an order of the Board of Immigration Appeals (BIA) dismissing her appeal of the denial of her motion to reopen. For the following reasons, we deny her petition for review.

I.

In 2004, Luna-Garcia entered the United States without inspection and was detained shortly thereafter. The Border Patrol issued a Notice to Appear

No. 16-60847

(NTA) and initiated removal proceedings against Luna-Garcia. The NTA noted that Luna-Garcia "FAILED TO PROVIDE A US ADDRESS." Other Border Patrol records (Form I-213) listed a San Antonio address "c/o [Immigration and Naturalization Service (INS)]" as a United States address and a Guatemalan village "Aldea El Zarzal, Mun. de San Reymundo" as Luna-Garcia's "permanent residence." The NTA informed Luna-Garcia that she was "required to provide the [INS], in writing, with [her] full mailing address and telephone number" and to "notify the Immigration Court immediately by using Form EOIR-33 whenever [she] change[s] [her] address or telephone number." The NTA explained that she "will be provided with a copy of [Form EOIR-33]" and that "[n]otices of hearing will be mailed to this address." Finally, the NTA warned Luna-Garcia that "[i]f [she] do[es] not submit Form EOIR-33 and do[es] not otherwise provide an address at which [she] may be reached during proceedings, then the Government shall not be required to provide [her] with written notice" and that the immigration judge (IJ) may order her removed *in absentia*. Luna-Garcia signed a certificate of service, acknowledging personal service of the NTA. Upon release, Luna-Garcia never followed up with the immigration court to provide an address.

On June 10, 2004, an IJ held a hearing, but Luna-Garcia failed to appear. The IJ found that "[a] notice of the hearing was . . . not given to [Luna-Garcia] because [she] failed to provide the court with [her] address as required under [8 U.S.C. § 1229(a)(1)(F)] after having been advised of that requirement in the [NTA]." The IJ consequently ordered Luna-Garcia removed *in absentia*.

In November 2015, Luna-Garcia filed a motion to reopen and rescind her 2004 *in absentia* removal order on the grounds that she did not receive notice of her removal proceedings. The IJ denied her motion to reopen because Luna-Garcia, despite knowing that her NTA did not include any address, had made no effort for over a decade to provide an address. The IJ also observed that

2

No. 16-60847

providing a Guatemalan address was inadequate because Luna-Garcia had no plans to return to Guatemala but instead was traveling to New York to seek employment.    The BIA affirmed the denial of her motion to reopen after observing that Luna-Garcia "cite[d] to no authority to support her argument that a foreign address is sufficient, especially when the NTA calls for a U.S. form of address."  Luna-Garcia filed a petition for review before this court.[1]

## II.

"[W]e review BIA denials of [motions to reopen] under a 'highly deferential abuse-of-discretion standard.' " *Mauricio-Benitez v. Sessions*, 908 F.3d 144, 147 (5th Cir. 2018) (quoting *Hernandez-Castillo v. Sessions*, 875 F.3d 199, 203 (5th Cir. 2017)).    We may overturn a BIA decision only if it is "capricious, without foundation in the evidence, or otherwise so irrational that it is arbitrary rather than the result of any perceptible rational approach."  *Id.* (quoting *Hernandez-Castillo*, 875 F.3d at 203).    "We review the BIA's rulings of law *de novo* . . . ."[2]  *Lopez Ventura v. Sessions*, 907 F.3d 306, 310 (5th Cir. 2018).

---

[1] In a separate set of petitions for review docketed as No. 15-60526, Luna-Garcia collaterally attacked the same underlying removal order, sought withholding of removal as well as relief under the Convention Against Torture (CAT), and challenged the BIA's denial of her motion to reopen based on allegedly new evidence. *Luna-Garcia v. Barr*, No. 15-60526, 2019 WL 1758871, at *1 (5th Cir. Apr. 22, 2019).  Luna-Garcia's collateral attack was based on the same argument raised in her motion to reopen and rescind at issue here:  that she did not receive notice despite having satisfied her obligation to provide an address by providing a foreign address. *See Rodriguez-Saragosa v. Sessions*, 904 F.3d 349, 353 n.1 (5th Cir. 2018) ("Motions to reopen are not 'collateral'; they are attempts to revisit an order made within the *same* matter[.]").  We, however, held that we lacked jurisdiction to entertain Luna-Garcia's collateral attack because she failed to file a petition for review of the removal order within 30 days. *Luna-Garcia*, 2019 WL 1758871, at *4.  We also rejected other grounds for relief. *Id.* at *4–5.

[2] "We need not resort to *Chevron* deference if '[t]he statutory text alone is enough to resolve [the question].' " *Ramos-Portillo v. Barr*, 919 F.3d 955, 960 n.4 (5th Cir. 2019) (alteration in original) (quoting *Pereira v. Sessions*, 138 S. Ct. 2105, 2113–14 (2018)).

No. 16-60847

III.

Luna-Garcia argues that she is entitled to reopen the *in absentia* removal order because she never received notice despite having satisfied her statutory obligation to provide an address to receive notice. We disagree.

A.

"Under 8 U.S.C. § 1229a(b)(5)(A), an alien who fails to attend a hearing after written notice has been provided to the alien or the alien's counsel of record shall be ordered removed *in absentia* if the government establishes by 'clear, unequivocal, and convincing evidence' that the written notice was so provided and that the alien is removable." *Hernandez-Castillo*, 875 F.3d at 204 (quoting 8 U.S.C. § 1229a(b)(5)(A)). However, "[a]n *in absentia* removal order entered without proper notice to the alien may be rescinded at any time upon a motion to reopen . . . ." *Mauricio-Benitez*, 908 F.3d at 147; *see also* 8 U.S.C. § 1229a(b)(5)(B), (C). In turn, an alien has an obligation to provide "an address . . . at which the alien may be contacted respecting proceedings under [8 U.S.C. § 1229a]." 8 U.S.C. § 1229(a)(1)(F)(i). "[I]f the alien fails to provide a mailing address in accordance with the statutory requirements, he is not entitled to written notice of his removal hearing." *Mauricio-Benitez*, 908 F.3d at 147; *accord* 8 U.S.C. § 1229a(b)(5)(B). Thus, "an in absentia removal order should not be revoked on the grounds that an alien failed to actually receive the required statutory notice of his removal hearing when the alien's failure to receive actual notice was due to his neglect of his obligation to keep the immigration court apprised of his current mailing address." *Gomez-Palacios v. Holder*, 560 F.3d 354, 360 (5th Cir. 2009).

Luna-Garcia argues that because § 1229(a)(1)(F)(i) does not specify whether an alien must provide a United States or a foreign address, the alien may satisfy her obligation to provide an address by providing a foreign address. However, we rejected a similarly restrictive interpretation in *Ramos-Portillo*

*v. Barr*, 919 F.3d 955, 960 (5th Cir. 2019), in which we held that the former version of the statute with virtually identical language, 8 U.S.C. § 1252b(a)(1)(F)(i) (repealed 1996), required a United States address.  Like its predecessor, the current version, § 1229(a)(1)(F)(i), "requires not just any 'address' or any 'address . . . at which an alien may be contacted.' "  *Ramos-Portillo*, 919 F.3d at 960.  Rather, § 1229(a)(1)(F)(i) requires "an address . . . at which the alien may be contacted *respecting proceedings under* [*8 U.S.C. § 1229a*]"—that is, removal proceedings.  As we have done in *Ramos-Portillo*, we must interpret 8 U.S.C. § 1229(a)(1)(F)(i) with "common sense," "a view to [the phrase's] place in the overall statutory scheme," and whether "[a] textually permissible interpretation furthers rather than obstructs the [statute's] purpose" evident from the text.  *See* 919 F.3d at 961 (first quoting *Abramski v. United States*, 573 U.S. 169, 179 (2014); then quoting *Davis v. Mich. Dep't of Treasury*, 489 U.S. 803, 809 (1989); and then quoting Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 63 (2012)).  To the extent § 1229(a)(1)(F)(i) concerns notifying an alien who is living in the United States and subject to removal from the United States, the alien must provide a United States address to satisfy the requirements of § 1229(a)(1)(F)(i).  *See id.* at 960–61 (observing the same for aliens in the United States who are subject to deportation from the United States under the previous version of the statute).

As the government acknowledges, the term "removal" as used in the newer version of the statute is broader than the term "deportation" used in the previous version of the statute.  *See, e.g.*, *I.N.S. v. St. Cyr*, 533 U.S. 289, 315 (2001) ("[T]he term 'removal' was substituted for 'deportation.' "); *Fernandez-Vargas v. Gonzales*, 548 U.S. 30, 33 n.1 (2006) (noting that removal "largely replaces what were formerly exclusion proceedings and deportation proceedings" (quoting Gerald L. Neuman, *Habeas Corpus, Executive Detention,*

*and the Removal of Aliens*, 98 Colum. L. Rev. 961, 966 (1998))); *see also Demore v. Kim*, 538 U.S. 510, 541 n.2 (2003) (Souter, J., dissenting in part) ("In 1996, Congress combined 'deportation' and 'exclusion' proceedings into a single 'removal' proceeding."). For example, 8 U.S.C. § 1229a(e)(2) expressly states that a "removable" alien can be either (1) an "inadmissible" alien "in the case of an alien not admitted to the United States" or (2) a "deportable" alien "in the case of an alien admitted to the United States." However, the fact that the term "removal" is a broader term than "deportation" does not change our interpretation of § 1229(a)(1)(F)(i). At the very least, removal encompasses deportation of aliens from the United States to a foreign country. *See* 8 U.S.C. § 1229a(e)(2); *Deportation*, Black's Law Dictionary (6th ed. 1990) ("The transfer of an alien . . . from the United States to a foreign country."). To effectuate service of notice on an alien who is physically in the United States by mail, the government must have the alien's United States address. *See* 8 U.S.C. § 1229(a)(1) (requiring service by mail); *Ramos-Portillo*, 919 F.3d at 960–61.

The government also acknowledges that the new statute expressly contemplates the applicability of the notice requirements to "any alien who remains in a contiguous foreign territory." 8 U.S.C. § 1229a(b)(5)(E). Indeed, Luna-Garcia cites to BIA decisions in which the government sent notices to addresses in Mexico to argue that a foreign address may be sufficient. *See Matter of Rivas-Vivas*, 2008 WL 486913, at * 1 (BIA Jan. 30, 2008); *Matter of Sanchez-Avila*, 21 I. & N. Dec. 444, 447 (BIA 1996). However, 8 U.S.C. § 1229a(b)(5)(E) and these BIA cases do not alter our analysis because they do not concern aliens who will remain and reside in the United States during the pendency of their proceedings.

As a threshold matter, Guatemala is not a contiguous foreign territory covered under 8 U.S.C. § 1229a(b)(5)(E). Moreover, 8 U.S.C. § 1229a(b)(5)(E)

generally concerns aliens who are applicants for admission—"alien[s] . . . who arrive[] in the United States" but "ha[ve] not been admitted" and must be inspected by immigration officers—who will remain in a foreign contiguous territory to await full or expedited removal proceedings to determine their admissibility.  8 U.S.C. § 1225(a)(1), (3); *see also Jennings v. Rodriguez*, 138 S. Ct. 830, 836–38 (2018) (explaining the removal processes for various types of applicants for admission at the border); *Matter of M-S-*, 27 I. & N. Dec. 509, 510 (A.G. 2019) (same).  Because 8 U.S.C. § 1229a(b)(5)(E) concerns removal (*i.e.* admissibility determination) for aliens not yet in the United States, it has little bearing on the requirement that an alien who will remain *in the United States* during her proceedings provide a United States address to receive notice by mail.

Our interpretation of 8 U.S.C. § 1229(a)(1)(F)(i) and § 1229a(b)(5)(E) is also consistent with the facts in the BIA cases cited by Luna-Garcia.  *Rivas-Vivas*, 2008 WL 486913, at * 1; *Sanchez-Avila*, 21 I. & N. Dec. at 447.  Unlike Luna-Garcia, those aliens were not physically in the United States and did not face deportation from the United States.  Instead, those aliens were applicants for admission who were turned away at the border and waited in Mexico for the immigration court to determine their admissibility into the United States. *Rivas-Vivas*, 2008 WL 486913, at * 1; *Sanchez-Avila*, 21 I. & N. Dec. at 446. These BIA decisions, therefore, also have little bearing on the requirement that aliens remaining in the United States during their proceedings provide a United States address.[3]

---

[3] Luna-Garcia also argues for the first time in her petition for rehearing that the recent implementation of the "Migrant Protection Protocols" somehow counsels against requiring a United States address.  Under the Protocols, aliens entering the United States from Mexico illegally or without documentation must remain in Mexico for the duration of their immigration proceedings. *Innovation Law Lab v. Nielsen*, 366 F. Supp. 3d 1110, 1115 (N.D. Cal. 2019) (explaining the details of the Protocols).  However, the record here clearly

No. 16-60847

In sum, § 1229(a)(1)(F)(i)—like its predecessor, § 1252b(a)(1)(F)(i)—requires an alien who is physically in the United States and subject to removal from the United States to provide a United States address to receive notice by mail. Applying this interpretation of § 1229(a)(1)(F)(i), we hold that the BIA did not abuse its discretion in dismissing Luna-Garcia's appeal. The BIA properly rejected the argument that a Guatemalan address was sufficient under these circumstances.

B.

Alternatively, even if we assume *arguendo* that an alien may satisfy her obligation to provide an address under § 1229(a)(1)(F)(i) by providing a foreign address, Luna-Garcia still cannot prevail.[4]

We may usually only affirm the BIA on the basis of its stated rationale for ordering an alien removed from the United States. "However, in certain circumstances, there may be limited exceptions to this rule. Even if there is a reversible error in the BIA's analysis, affirmance may be warranted 'where there is no realistic possibility that, absent the errors, the . . . BIA would have reached a different conclusion.' " *Enriquez-Gutierrez v. Holder*, 612 F.3d 400, 407 (5th Cir. 2010) (quoting *Cao He Lin v. U.S. Dep't of Justice*, 428 F.3d 391, 401 (2d Cir. 2005)); *see also Fa Wang v. Sessions*, 736 F. App'x 477, 482 (5th Cir. 2018) ("Even when we doubt the propriety of some of the credibility findings, we agree it is proper to affirm if other reasons are sound . . . ."); *Vazquez v. Sessions*, 885 F.3d 862, 872 (5th Cir. 2018). Here, there is no

---

shows that Luna-Garcia has lived in the United States since 2004. In any event, our holding does not prevent an alien remaining in Mexico under the Protocols—who is therefore not in the United States—from using a foreign address.

[4] "In this circuit, 'alternative holdings are binding precedent and not *obiter dicta.*' " *Ramos-Portillo*, 919 F.3d at 962 n.5 (quoting *Whitaker v. Collier*, 862 F.3d 490, 496 n.14 (5th Cir. 2017)).

"realistic possibility" that the BIA would reach a different conclusion on remand for two reasons. *Enriquez-Gutierrez*, 612 F.3d at 407.

First, the purported Guatemalan address that Luna-Garcia provided was not an address "at which the alien may be contacted" as required under § 1229(a)(1)(F)(i). The IJ found that Luna-Garcia "had no plans to go [back to Guatemala] but was traveling to New York to seek employment." The Border Patrol agent's notes also confirm that "Luna-Garcia claim[ed] that she was headed to New York . . . to seek employment" when she was stopped. In *Ramos-Portillo*, 919 F.3d at 961–62, we held that "[i]t was not irrational or capricious for the BIA to conclude that [an illegal alien]—who entered the United States unlawfully, seeking to work and live in the United States, and whom the government sought to deport from the United States—could not be contacted in El Salvador regarding his deportation proceedings that would take place in the United States." Likewise, given Luna-Garcia's admission that she was going to New York, she could not be contacted in Guatemala.

Second, Luna-Garcia failed to follow up with an address despite the fact that her NTA did not list a United States address. 8 C.F.R. § 1003.15(d)(1) states that "[i]f the alien's address is not provided on the [NTA], . . . the alien must provide to the Immigration Court where the charging document has been filed, within five days of service of that document, a written notice of an address and telephone number at which the alien can be contacted." Even if we assume that Luna-Garcia had provided a valid mailing address for purposes of § 1229(a)(1)(F)(i), Luna-Garcia's NTA did not contain a U.S. address, thus requiring her to follow up with the immigration court with an address. *See Ramos-Portillo*, 919 F.3d at 962 ("[R]egardless of what an immigration official recorded in his notes, what matters is that Ramos-Portillo was served with an OSC that did not contain any address but failed to follow up and provide an address."). Here, as the IJ found, Luna-Garcia never followed up with an

No. 16-60847

address upon release, after the charging document was filed, or through her many purported relocations over the years. *See id.*

In sum, given the IJ's findings that Luna-Garcia failed to provide an address at which she could be contacted and that she failed to follow up with an address despite being served with an NTA listing no address, there is no realistic possibility that the BIA would reach another outcome than to dismiss her appeal. *See Fa Wang*, 736 F. App'x at 482; *Enriquez-Gutierrez*, 612 F.3d at 407. Accordingly, we also deny Luna-Garcia's petition for review on these alternative grounds.

IV.

Luna-Garcia argues that the BIA violated her due process rights: (1) by ordering her removed *in absentia* without notice and (2) by requiring a United States address without first informing her that she must provide a United States address. We reject these contentions. As a threshold matter, Luna-Garcia did not receive notice not because of the government's malfeasance but "due to [her] neglect of [her] obligation to keep the immigration court apprised of [her] current mailing address." *Gomez-Palacios*, 560 F.3d at 360; *accord Mauricio-Benitez*, 908 F.3d at 148. We are similarly unpersuaded by the argument that she was not informed of her obligation to provide a United States address. The NTA gave her ample warning. On the first page, the NTA stated that Luna-Garcia "FAILED TO PROVIDE A US ADDRESS." On the second page, the NTA further informed Luna-Garcia that she is required to provide the INS, in writing, with her full mailing address as "[n]otices of hearing will be mailed to this address." The NTA also warned her of the consequences of failing to provide and update her full mailing address: that she could be ordered removed *in absentia*. These warnings were sufficient to apprise Luna-Garcia that she needed to provide a full United States address to receive notices of hearing.

10

No. 16-60847

V.

We DENY Luna-Garcia's petition for review.