# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

No. 18-60409

United States Court of Appeals
Fifth Circuit

**FILED**

November 14, 2019

Lyle W. Cayce
Clerk

RICARDO ALMEDA-GUZMAN, also known as Guadalupe Federico Gutierrez-Villarreal, also known as Armando Contreras-Beltran,

     Petitioner

v.

WILLIAM P. BARR, U. S. ATTORNEY GENERAL,

     Respondent

Petition for Review of an Order of the
Board of Immigration Appeals
BIA No. A205 197 448

Before ELROD, WILLETT, and OLDHAM, Circuit Judges.

PER CURIAM:*

Ricardo Almeda-Guzman, a native and citizen of Mexico, petitions for review of the decision of the Board of Immigration Appeals (BIA) denying his motion to remand and dismissing his appeal from the Immigration Judge's (IJ) denial of his applications for cancellation of removal, asylum, withholding of removal under the Immigration and Nationality Act (INA), and relief under

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 18-60409

the Convention Against Torture (CAT). He also moves for a remand for consideration of additional evidence. We deny the petition and the motion.

I.

Almeda-Guzman entered the United States without permission in 2007. About five years later, the Department of Homeland Security (DHS) began removal proceedings against him. Almeda-Guzman conceded removability. However, he applied for relief from removal on four primary grounds: cancellation of removal, asylum, withholding of removal under the INA, and relief under the CAT.[1] As to cancellation of removal, Almeda-Guzman argued that removal would cause exceptional and extremely unusual hardship to his children. As to the other grounds for relief, he argued that his removal would result in his persecution at the hands of a drug-trafficking organization. He and several of his family members testified and submitted written statements in support of his applications for relief, and he also provided evidence of the conditions in Mexico.

The IJ denied Almeda-Guzman's applications and ordered him removed to Mexico. The IJ began by finding that Almeda-Guzman was not a credible witness. As bases for this finding, the IJ wrote that Almeda-Guzman's demeanor was "confrontational" and "evasive," and that he "avoided answering" some questions. The IJ listed examples of this behavior, such as Almeda-Guzman's "evasive" answers to questions about his association with another individual, his criminal history, his finances, and his family life. The IJ found the testimony of Almeda-Guzman's family members to be credible.

---

[1] Failing in these, Almeda-Guzman alternatively applied for voluntary departure. The IJ denied that application because of Almeda-Guzman's "prior history of voluntary departures . . . and the use of aliases when encountered." This denial was affirmed by the BIA, and Almeda-Guzman does not contest it in his petition for review.

No. 18-60409

On the merits, the IJ concluded that Almeda-Guzman's application for cancellation of removal should fail because he did not meet his burden of establishing ten years of continuous physical presence in the United States, good moral character, or exceptional and extremely unusual hardship to his children. *See* 8 U.S.C. § 1229b(b)(1). As to asylum, the IJ concluded that Almeda-Guzman had missed the one-year statutory filing deadline. *See* 8 U.S.C. § 1158(a)(2)(B). As to withholding of removal under the INA, the IJ concluded that the evidence did not show Almeda-Guzman had been persecuted in the past, and that his "subjective fear of returning to Mexico lack[ed] credibility." The IJ also found Almeda-Guzman's evidence as to the conditions in Mexico to establish only that cartels "terrorize the general populace," not that Almeda-Guzman would personally be harmed "on account of any protected ground." As to the alleged protected ground itself, the IJ concluded that Almeda-Guzman failed to show "membership in a particular social group" under the INA. *See* 8 U.S.C. § 1101(a)(42). The IJ similarly denied Almeda-Guzman's CAT claim for a failure to show that he would be tortured upon his return to Mexico.

Almeda-Guzman appealed to the BIA, arguing primarily that the IJ erred in impugning his credibility; in finding that he failed to establish good moral character, hardship to his children if he were removed, and ten years of continuous presence in the United States; and in rejecting his claim of belonging to "a particular social group." Almeda-Guzman also moved for a remand so that he could submit additional evidence about dangerous conditions in Mexico.

The BIA concluded that Almeda-Guzman had not "meaningfully contested" the IJ's decision on the asylum and CAT issues and had therefore waived any challenge on those grounds. The BIA also found no clear error in the IJ's credibility findings, noting that the IJ "provided specific and cogent

3

No. 18-60409

reasons to support" those findings—inconsistent answers, use of aliases, demeanor, and evasive testimony.  As to cancellation of removal, the BIA agreed with the IJ that Almeda-Guzman failed to establish a ten-year continuous physical presence in the United States.  As a result, the BIA did not reach Almeda-Guzman's arguments pertaining to good moral character or hardship to his children.  In addition, the BIA agreed with the IJ that Almeda-Guzman failed to show sufficient likelihood of persecution and that his alleged "particular social group" is not "cognizable" under the INA, foreclosing his application for withholding of removal.  On these bases, the BIA dismissed Almeda-Guzman's appeal.  The BIA also denied Almeda-Guzman's motion for a remand because the evidence he wished to submit did not go to his credibility or whether he could establish membership in a "particular social group."

Almeda-Guzman timely filed a petition for review in this court.  He argues that the BIA erred in not overturning the IJ's adverse credibility finding, in finding his CAT claim waived, and in denying his motion to remand for consideration of new evidence.  Almeda-Guzman also moves for a remand so that all his claims can be reconsidered in light of his alleged credibility and new evidence.  We will first address the credibility argument, and then—because they are interrelated—address the remaining arguments together.

II.

We review the BIA's legal conclusions *de novo* and its factual findings for substantial evidence.  *Shaikh v. Holder*, 588 F.3d 861, 863 (5th Cir. 2009).  The substantial evidence standard requires the alien to "show that the evidence was so compelling that no reasonable factfinder could conclude against it." *Wang v. Holder*, 569 F.3d 531, 537 (5th Cir. 2009); *see also id.* at 536–37 ("[T]his court may not reverse the BIA's factual findings unless the evidence compels it.").  Our review is normally limited to the BIA's decision, but we review "the

IJ's decision to the extent that it influenced the BIA." *Shaikh*, 588 F.3d at 863; *Zhu v. Gonzales*, 493 F.3d 588, 593 (5th Cir. 2007).

A.

As to credibility, because the BIA chose to "defer to [the IJ's] findings" on that matter, we review the IJ's decision as well. *Zhu*, 493 F.3d at 593. The standard for review of credibility determinations is essentially the same as the general substantial evidence standard: we defer "to an IJ's credibility determination unless, from the totality of the circumstances, it is plain that no reasonable fact-finder could make such an adverse credibility ruling." *Wang*, 569 F.3d at 538 (quoting *Lin v. Mukasey*, 534 F.3d 162, 167 (2d Cir. 2008)). By statute:

> [A] trier of fact may base a credibility determination on the demeanor, candor, or responsiveness of the applicant or witness, the inherent plausibility of the applicant's or witness's account, the consistency between the applicant's or witness's written and oral statements (whenever made and whether or not under oath, and considering the circumstances under which the statements were made), the internal consistency of each such statement, the consistency of such statements with other evidence of record . . . , and any inaccuracies or falsehoods in such statements, without regard to whether an inconsistency, inaccuracy, or falsehood goes to the heart of the applicant's claim, or any other relevant factor.

8 U.S.C. § 1158(b)(1)(B)(iii); *see also* 8 U.S.C. § 1231(b)(3)(C). Thus, "an IJ may rely on *any* inconsistency or omission in making an adverse credibility determination as long as the 'totality of the circumstances' establishes that an . . . applicant is not credible." *Wang*, 569 F.3d at 538 (quoting *Lin*, 534 F.3d at 167).

Almeda-Guzman argues that the IJ erred in failing to credit his testimony, and that the BIA erred in not overturning the IJ's adverse credibility finding. He asserts that the IJ's finding that he was evasive in

answering a question about a 2005 traffic stop was erroneous because he simply "was initially unable to clearly remember" the relevant facts relating to that incident. He similarly argues that it is generally "difficult to be specific about events that occurred ten or more years ago." He also takes issue with the IJ's citation to his use of aliases as harming his credibility, arguing that he only used aliases as a means of hiding from a drug-trafficking organization. In addition, he disputes that he was evasive when asked about an arrest for aggravated robbery.[2] Finally, he argues that evidence going to his lack of fear of persecution many years ago cannot support an adverse credibility finding today.

Almeda-Guzman fails to show that no reasonable fact-finder could have made an adverse credibility finding as to his testimony. When counsel first asked Almeda-Guzman if there was "any marijuana that was found in the car" during the 2005 traffic stop, Almeda-Guzman responded, "Me, no." When counsel repeated the question, Almeda-Guzman responded, "Not the one at Hebron." After the IJ intervened multiple times to ask Almeda-Guzman to listen to what he was being asked, and on counsel's third attempt to ask the whether "marijuana [was] found in the car" during the traffic stop, Almeda-Guzman stated, "I don't remember that they would have found marijuana and that I would have been involved in that. I've never had any charges for drugs or for alcohol." The BIA permissibly deferred to the IJ's interpretation of this testimony as evasive, as Almeda-Guzman's assertion that his unresponsive

---

[2] Almeda-Guzman also states that the IJ erroneously found that Almeda-Guzman admitted that "he had been arrested in 2014 for driving a motor vehicle while under the influence of alcoholic beverages," when he had in fact denied such an arrest. The BIA assumed that this finding was clear error, but concluded that the IJ had provided "other cogent and specific reasons . . . that support an adverse credibility finding." We address the sufficiency of those other reasons.

answers were the result of being "unable to clearly remember" the facts does not show that no reasonable fact-finder could have found his answers purposefully evasive.     Similarly, Almeda-Guzman's argument that inconsistencies or omissions arising from evidence from many years ago is unavailing, as the fact-finder is statutorily entitled to base a credibility determination on any statements, "whenever made."     8 U.S.C. § 1158(b)(1)(B)(iii); *see also Wang*, 569 F.3d at 538 (noting that "an IJ may rely on *any* inconsistency or omission" in weighing an alien's credibility (quoting *Lin*, 534 F.3d at 167)).

The IJ and BIA also permissibly relied on Almeda-Guzman's inconsistent testimony relating to his use of aliases as supporting the IJ's adverse credibility finding.  Almeda-Guzman's argument that his use of aliases was justified because of his fear of being targeted by a drug-trafficking organization does not address the fact that he contradicted himself by first testifying that he began using aliases in 2004 but later testifying that he began using them in 2000 or 2001.  Moreover, the IJ and BIA pointed to other evasive or inconsistent statements on Almeda-Guzman's part that he fails to explain away.  For instance, the IJ and BIA found Almeda-Guzman's statement that he has "always had fear [of] return[ing] to Mexico" inconsistent with his voluntary returns to Mexico on several prior occasions and evidence from a January 2012 encounter with immigration officials where Almeda-Guzman did "not claim[] or express[] fear of returning to his native country of Mexico."[3]  The

---

[3] The IJ and BIA's discussion of the January 2012 evidence is somewhat unclear.  The IJ wrote that Almeda-Guzman "previously stated that he did not have fear of returning to Mexico," and the BIA stated that Almeda-Guzman "told immigration enforcement agents that he did not fear returning to Mexico."  However, the DHS form that the IJ and BIA cite for this proposition only states that "Almeda-Guzman is not claiming or expressing fear of returning to his native country of Mexico"—not that he affirmatively stated that he had no such fear.  Nevertheless, to the extent the IJ and BIA may have erroneously construed the January 2012 evidence as an affirmative inconsistent statement, this is not a basis to grant

No. 18-60409

IJ and BIA also pointed to Almeda-Guzman's nonresponsive testimony on his personal finances and contradictory statements about what year he arrived in the United States.

All this considered, Almeda-Guzman fails to meet his burden of showing that no reasonable fact-finder would have made an adverse credibility finding against him. There is therefore no reason to remand for reconsideration of his applications for relief on this basis.

### B.

Almeda-Guzman next argues that the BIA erred by denying his motion to remand for consideration of new evidence.[4] A denial of a motion to remand based on new evidence is reviewed for abuse of discretion. *See Ramchandani v. Gonzalez*, 434 F.3d 337, 340–41 & n.6 (5th Cir. 2005).

The basis of Almeda-Guzman's motion to remand, in the BIA's words, was his alleged discovery of "threats against [his] life posted on a Mexican Facebook site." His evidence of the threat included affidavits chronicling his

---

Almeda-Guzman's petition because there is no realistic possibility that the BIA would have reached a different conclusion had it construed the evidence as an omission instead. *See Enriquez-Gutierrez v. Holder*, 612 F.3d 400, 407 (5th Cir. 2010) ("Even if there is a reversible error in the BIA's analysis, affirmance may be warranted 'where there is no realistic possibility that, absent the errors, the BIA would have reached a different conclusion.'" (alteration omitted) (quoting *Cao He Lin v. U.S. Dep't of Justice*, 428 F.3d 391, 401 (2d Cir. 2005))); *Wang*, 569 F.3d at 538 (stating that "an IJ may rely on *any* inconsistency or omission in making an adverse credibility determination" (quoting *Mukasey*, 534 F.3d at 167)). The IJ and BIA were entitled to rely on Almeda-Guzman's failure to mention any fear of returning to Mexico when he encountered immigration officials in 2012—at least when combined with his multiple past trips to Mexico—in finding his testimony of "always" having such a fear lacking in credibility.

[4] Almeda-Guzman's brief in this court interchangeably refers to his motion as a "motion to remand" and a "motion to reopen." His brief to the BIA termed it a "motion to remand," and the BIA treated it as such. At any rate, the distinction is meaningless in these circumstances as a motion to remand "to present additional evidence not available at [the] initial hearing . . . is subject to the same standards and regulations governing motions to reopen." *See Ramchandani v. Gonzalez*, 434 F.3d 337, 340 n.6 (5th Cir. 2005).

discovery of the threat, screenshots, and a translation of the text of the threat.[5] The translated text of the threat states that "we are Offering $ 20.000 dllrs to whoever gives us the location of a Known RAT whose name is Guadalupe Gutierrez."[6] In his brief to the BIA, Almeda-Guzman sought "a remand, for the [IJ] to consider the new evidence he has obtained relating to the threats to his life, both as it relates to the IJ's adverse credibility finding, and to his applications for relief."

The BIA denied the motion for a failure to show that the new evidence was "material." Specifically, the BIA stated that the new evidence only went to "the issue of the hardship that would be faced by [Almeda-Guzman's] qualifying relatives" under his application for cancellation of removal, and therefore did "not address the issues on which the [IJ] found [Almeda-Guzman] not credible, and it is not material to the issue of whether he has met his burden to establish a nexus to a cognizable particular social group."

In his briefing in this court, Almeda-Guzman argues that the new evidence goes to the legitimacy of his fear of the cartel, and that it "should have been clear [to the BIA] that the new evidence was crucial to *all* of his claims of relief which involved such fear." As a result, he argues that the BIA erred by treating his new evidence as only going to his application for cancellation of removal. Specifically, he argues that this new evidence goes to his CAT claim, which the BIA dismissed as waived for failure to "meaningfully contest[]" the IJ's determination that Almeda-Guzman lacked "documentary evidence to substantiate a particularized threat of torture in Mexico."[7] Almeda-Guzman

---

[5] The threat also includes what are averred to be a photograph of Almeda-Guzman and his "likeness but with attached whiskers and big ears, resembling a rat."

[6] Almeda-Guzman asserts that his true name is Guadalupe Gutierrez-Villarreal.

[7] Although Almeda-Guzman argues that his new evidence goes to all his applications for relief, the BIA found his asylum and voluntary departure claims waived as well, and Almeda-Guzman does not dispute this finding in his briefing in this court. And we do not

No. 18-60409

thus argues that the BIA committed two intertwined errors: (1) failing to recognize that his new evidence went to his CAT claim, and (2) treating any CAT arguments as waived on the basis that he did not address the insufficiency of his CAT evidence.[8]

We need not address whether the BIA committed these errors because we may still affirm where "there is no realistic possibility that the BIA would reach another outcome than to dismiss [the] appeal." *Luna-Garcia v. Barr*, 932 F.3d 285, 292 (5th Cir. 2019); *see also Enriquez-Gutierrez v. Holder*, 612 F.3d 400, 407 (5th Cir. 2010). Here, the Attorney General argues that Almeda-Guzman fails to demonstrate his eligibility for CAT relief even if his new evidence is considered.

Almeda-Guzman's eligibility for CAT relief depends on his showing that it is "more likely than not that the alien will be tortured upon return to his homeland" and that "there [is] sufficient state action involved in that torture." *Garcia v. Holder*, 756 F.3d 885, 891 (5th Cir. 2014). Here, there is no realistic

---

have jurisdiction to review the discretionary denial of cancellation of removal. *See* 8 U.S.C. § 1252(a)(2)(B)(i). This leaves the denial of Almeda-Guzman's withholding of removal claim. However, the BIA properly pointed out that the new evidence did not go to whether he had established "membership in a particular social group," as required for withholding of removal eligibility. 8 U.S.C. § 1231(b)(3)(A). The BIA separately, and properly, concluded that Almeda-Guzman's proposed social group—those who have informed on cartels to the U.S. government—"is not cognizable." *See Zamora-De Guevara v. Sessions*, 728 F. App'x 356, 356 (5th Cir. 2018) (unpublished) ("[W]e have previously declined to find that 'former informants . . . constitute a particular social group.'" (quoting *Hernandez De La Cruz v. Lynch*, 819 F.3d 784, 787 (5th Cir. 2016))).

[8] Almeda-Guzman also argues that the BIA should not have deemed his CAT claim waived because the IJ denied it in part because of his "lack of credibility"—an issue that Almeda-Guzman hotly contested in his BIA brief, and that the BIA addressed as relevant to his withholding of removal claim. Even if Almeda-Guzman is correct that the BIA erred on this issue, the error is harmless and therefore does not support a remand to the BIA. *See Luna-Garcia v. Barr*, 932 F.3d 285, 292 (5th Cir. 2019) (denying a petition for review where, absent the error, "there is no realistic possibility that the BIA would reach another outcome than to dismiss [the] appeal"). This is because, as discussed above, the IJ and BIA permissibly determined that Almeda-Guzman's testimony was not credible. As a result, any credibility-based argument in support of his CAT claim would have failed.

No. 18-60409

possibility that the BIA would find Almeda-Guzman eligible for CAT relief because he does not provide any credible evidence of "sufficient state action." *Id.* at 891; *see also id.* (defining sufficient state action as "a misuse of power, possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law"). Only Almeda-Guzman's own testimony arguably goes to this issue, and the IJ and BIA permissibly found that his testimony lacked credibility, as discussed above.[9] Because there is no realistic possibility that the IJ or BIA would conclude that Almeda-Guzman has a viable CAT claim even considering his new evidence, both the CAT claim and the motion for remand fail.

## III.

The petition for review and motion for remand are DENIED.

---

[9] To the extent any of his generalized evidence about dangerous conditions in Mexico references government corruption, there is no credible evidence connecting those conditions to Almeda-Guzman or his situation. *Cf. Garcia*, 756 F.3d at 892 (noting that "potential instances of violence committed by non-governmental actors against citizens, together with speculation that the police might not prevent that violence, are generally insufficient to prove government acquiescence").